**Brian INGBER, Plaintiff-Appellant, Cross-Appellee,**

v.

**Lee ENZOR, Superintendent, FCI Danbury, Defendant-Appellee, Cross-Appellant.**

**Nos. 423, 670, Docket 87–2312, 87–2372.**

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1987.

Decided March 1, 1988.

Elkan Abramowitz, New York City (Todd J. Krouner, Obermaier, Morvillo, Abramowitz & Iason, P.C., New York City, of counsel), for plaintiff-appellant, cross-appellee.

Michael Chertoff, Sp. Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Aaron R. Marcu, Asst. U.S. Atty., New York City, of counsel), for defendant-appellee, cross-appellant.

Before PIERCE, MINER and DAVIS,* Circuit Judges.

MINER, Circuit Judge:

The United States District Court for the Southern District of New York (Brieant, Ch.J.) granted in part and denied in part Brian Ingber's motion for relief pursuant to 28 U.S.C. § 2255 and vacated one of his convictions for mail fraud in light of the Supreme Court's decision in *McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Ingber appeals from so much of the judgment as denied his request for relief, and the

government cross-appeals from the district court's decision to vacate one of Ingber's convictions. We conclude that *McNally* applies retroactively to Ingber's convictions under 18 U.S.C. § 1341 and affirm the judgment of the district court.

## BACKGROUND

Ingber was convicted for mail fraud in connection with his election and tenure as Supervisor for the Town of Fallsburg, New York. The indictment charged that Ingber, by falsifying voting documents including absentee ballots cast in the election, had defrauded the citizens of Fallsburg "of their ballots and their right to a fair and impartial electoral process," and that he had obtained through fraud "the salary, powers and privileges of the Office of Supervisor" ("count nine" or the "election fraud scheme"). In addition, Ingber was charged, *inter alia*, with using the mails as part of a scheme to conceal his interest in co-defendant Service Scaffold, Inc. ("Scaffold") in order to steer a $540,000 town sewer project to Scaffold, thereby depriving Fallsburg of his honest services while reaping a pecuniary benefit for Scaffold ("count five" or the "sewer fraud scheme").

Count nine was severed by Chief Judge Brieant from the other charges and tried separately before a jury in the Southern District of New York. At the close of evidence, the court instructed the jury that they could find the defendant guilty of mail fraud if they determined that Ingber

devised a scheme or artifice for the purpose of defrauding the citizens of the Town of Fallsburg of an intangible right, namely, the right to a fair and impartial electoral process, free from the casting of false, forged or fraudulent ballots, or that he devised a scheme for the purpose of obtaining money or property,—specifically, the salary—powers and privileges of the Office of Supervisor of the Town of Fallsburg, by false and fraudulent

* Oscar H. Davis, Circuit Judge, U.S. Court of Appeals for the Federal Circuit, sitting by desig-

nation.

pretenses, representations or promises as alleged in the indictment.

The jury was instructed to reach a general verdict.

When Judge Brieant took the verdict, the foreperson of the jury first replied "undecided," then "not guilty," and finally "guilty." He polled the jury, which unanimously affirmed the guilty verdict, whereupon, with the consent of counsel, he initiated the following exchange with the foreperson:

THE COURT: ... I would like to be sure there is no confusion.

JUROR NUMBER 1: Yes, we started to break it down by issues. And as you recall, the first part you said there were two parts to it. And we either had to have the first or the second. So the first one, we did not agree on, but the second we did agree on.

THE COURT: And the second one was that the purpose of the scheme was to acquire the office? Is that what the second one was?

JUROR NUMBER 1: Right.

THE COURT: Now, with that clarification, are all of you jurors in agreement as to what the foreperson has said?

THE JURORS: Yes.

THE COURT: Is the jury's verdict unanimous?

THE JURORS: Yes.

THE COURT: All right, the record will indicate that you all so advised the Court, and the Court will direct that the verdict be recorded as rendered as a verdict of guilty.

*Ingber v. Enzor*, 664 F.Supp. 814, 820–21 (S.D.N.Y.1987). Ingber was convicted of count nine on January 16, 1986.

The remaining counts were tried before Judge Brieant without a jury. The count charging the sewer fraud scheme also alleged two purposes: (1) obtaining cash and property of the town; and (2) depriving the town of Ingber's "honest and faithful services" as Supervisor. At trial, the government presented evidence that Scaffold was owned by Ingber's father and brother, and that Ingber was secretary-treasurer of the company. In violation of state laws governing conflicts of interest, Ingber concealed his involvement with Scaffold, issued his personal guaranty to ensure that the company would get a surety bond (a prerequisite to receiving the town's sewer contract) and arranged for accelerated payments to Scaffold without the customary review process.

Judge Brieant found that the mail fraud had as its direct end "obtaining financial benefits for Service Scaffold." He declared Ingber guilty of "knowing and willful participation in ... early and excessive payments to Service Scaffold." Judge Brieant also found that, as Supervisor, Ingber had pressured the town to take early delivery of equipment needed for the project. Under the contract, Scaffold was required to store and care for the equipment until it was needed. Thus, Ingber relieved the company of its contractual obligation and shifted responsibility for insurance and storage to the town. In addition, because of the early delivery, the town's warranties on the equipment began to run before the date provided in the contract. Judge Brieant also pronounced Ingber guilty of count ten of the indictment, not at issue on this appeal.

Shortly after his conviction on count five, Ingber requested clarification of the Judge's trial findings. In a Memorandum and Order, dated July 22, 1986, the Judge clarified his findings but adhered to his earlier conclusions. He noted that Ingber "not only administered the contract but arranged early payments on the contract to favor Service Scaffold at the expense of the Town." The record included evidence of Ingber's knowing and willful failure to disclose the extent of his involvement with Scaffold and of his furtherance of the overall scheme through the failure to disclose.

On September 19, 1986, Ingber was sentenced to one-year terms of imprisonment each on counts five, nine and ten, to run consecutively, and was ordered, along with Scaffold, to make restitution to the town of $31,000 for losses sustained as a result of the sewer fraud scheme. This court summarily affirmed the convictions on February 4, 1987.

In June 1987, the Supreme Court announced its decision in *McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The mail fraud conviction in *McNally* rested on a jury instruction that allowed the jury to find guilt if they determined that the citizens had been deprived of their right to honest government. 107 S.Ct. at 2882. On appeal, the Supreme Court reversed, holding that 18 U.S.C. § 1341 was directed solely at deprivations of property rights. *Id.* at 2881. Because the jury was not required to find a deprivation of money or property rights in order to convict, the jury verdict could not be upheld.

After the Supreme Court announced its decision in *McNally*, Ingber filed a petition pursuant to 28 U.S.C. § 2255 attacking his mail fraud convictions. He claimed that the convictions on counts five and nine rested on deprivations of "intangible" rights not related to property or money. In a thoughtful Memorandum and Order, dated July 15, 1987, Judge Brieant held that *McNally* applied retroactively to Ingber's convictions. He upheld the conviction for the sewer fraud scheme, finding no merit in Ingber's contention that the conviction rested solely on a violation of the citizenry's right to honest government. Relying upon his findings of fact at trial, as later clarified, Judge Brieant emphasized that, although the indictment alleged that the scheme had a dual purpose, the government had produced ample evidence to support a verdict based on deprivation of rights to money and property. He sustained the conviction on count five observing that "[u]nlike the victims of the *McNally* defendants' alleged mail fraud, the Town here suffered a quantifiable tangible loss."

However, Judge Brieant concluded that the count nine conviction could not stand. The jury had been instructed that they could find guilt on alternative grounds, one of which, deprivation of the right to fair and impartial elections, was impermissible under *McNally*. As instructed, the jury had reached a general verdict, making it impossible to determine whether they had found against Ingber on an impermissible basis. He rejected the government's view

that the court's colloquy with the foreperson of the jury had transformed the general verdict into a special verdict, noting that "colloquy of counsel directed toward eliminating confusion should not be allowed to substitute for the careful procedures required to elicit the unusual result of a special verdict." *Ingber v. Enzor*, 664 F.Supp. at 821. Resolving the doubt in Ingber's favor, *see United States v. Orozco-Prada*, 732 F.2d 1076, 1083 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984), the Chief Judge vacated the conviction on count nine.

Both Ingber and the government now appeal the district court's decision, presenting the same arguments considered in the district court. We agree with Chief Judge Brieant's conclusions.

## DISCUSSION

*Retroactivity*

In *McNally* the Supreme Court found that section 1341 was limited to the protection of property rights. 107 S.Ct. at 2881. That decision overruled established Second Circuit precedent to the contrary, *see, e.g., United States v. Margiotta*, 688 F.2d 108, 121–22 (2d Cir.1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 891, 77 L.Ed.2d 282 (1983), correcting this court's erroneous view that deprivation of intangible rights not related to money or property was criminally punishable under the mail fraud statute. Thus, those convicted under our view of the statute were convicted of conduct that was not a crime.

This conclusion compels us to concur with Judge Brieant's determination that *McNally* should apply retroactively to Ingber's conviction. The Supreme Court has observed that "a legal system based on precedent has a built-in presumption of retroactivity," although retroactivity "is not compelled, constitutionally or otherwise." *Solem v. Stumes*, 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984) (citations omitted). The Court has emphasized that "full retroactivity [is] a necessary adjunct to a ruling that a trial court lacked authority to convict or punish a

criminal defendant in the first place." *United States v. Johnson*, 457 U.S. 537, 550, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202 (1982).[1] Under such circumstances, the prior conviction is vacated as void *ab initio*. *Id.; see also Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974) (defendant who may have been convicted "for an act that the law does not make criminal" entitled to challenge conviction to avoid miscarriage of justice).

A defendant may be denied the benefit of a new rule of law on collateral attack of his conviction if the rule is announced, and he fails to raise it, before his direct appeals are exhausted. *See Davis*, 417 U.S. at 345, 94 S.Ct. at 2304. However, this court has taken a different approach to retroactivity when the new rule is handed down after the time for direct appeal has expired. In *United States v. Loschiavo*, 531 F.2d 659 (2d Cir.1976), we held that *United States v. Del Toro*, 513 F.2d 656 (2d Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975), which altered the definition of "public official" under 18 U.S.C. § 201(b) and reversed a conviction for bribing an employee of the City of New York, should be applied retroactively to Loschiavo's conviction under the statute for bribing the same New York City employee. *Id.* at 665–66. Similarly, in *United States v. Liguori*, 438 F.2d 663 (2d Cir.1971), on petition for relief under section 2255, we vacated the petitioners' drug convictions in light of the Supreme Court's decisions in *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), which invalidated statutory presumptions that had permitted convictions of the *Liguori* petitioners without the introduction of direct evidence. *Id.* at 669–70. Both *Liguori* and *Loschiavo* involved changes in substantive law unavailable to the petitioners on direct appeal. *See Loschiavo*, 531 F.2d at 665; *Liguori*, 438 F.2d at 665. We therefore declined to impose an exhaustion requirement in those cases and entertained the petitions despite the fact that an argument anticipating the new rule was not made on direct appeal in *Liguori*, 438 F.2d at 665, and was presented for the first time in a petition for certiorari in *Loschiavo*, 531 F.2d at 664–65.

Although Ingber failed to raise his present challenge on appeal or in a petition for writ of certiorari, retroactive application is necessary to avoid an unfair result. As noted above, this circuit formerly considered deprivation of the right to honest government to be within the scope of 18 U.S.C. § 1341. *See Margiotta*, 688 F.2d at 120–21. The *Margiotta* decision was but one in a series of Second Circuit decisions expanding the scope of section 1341. The steady expansion by this and other circuits of the mail and wire fraud statutes continued for more than a decade, unaddressed by the Supreme Court. *See, e.g., United States v. Newman*, 664 F.2d 12 (2d Cir. 1981); *United States v. Bronston*, 658 F.2d 920 (2d Cir.1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982); *United States v. Von Barta*, 635 F.2d 999 (2d Cir.1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981); *United States v. Bohonus*, 628 F.2d 1167 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980); *United States v. Condolon*, 600 F.2d 7 (4th Cir. 1979); *United States v. Bush*, 522 F.2d 641 (7th Cir.1975), *cert. denied*, 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); *United States v. States*, 488 F.2d 761 (8th Cir. 1973), *cert. denied*, 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974). Ingber's time to file a petition for a writ of certiorari expired well before the Supreme Court overturned these precedents in *McNally*. Were we to penalize Ingber for failing to challenge such entrenched precedent, we would ascribe to attorneys and their clients the power to prognosticate with greater precision than the judges of this court. Such a rule would encourage appeal of even well-settled points of law. We see no

---

1. Of course, the instant case is not concerned with retroactive application of new rules of criminal procedure which involves a different analysis. *See, e.g., Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Because we consider the retroactive effect of a new rule of substantive law, the criminal procedure cases do not inform our decision here.

value in imposing a responsibility to pursue such a "patently futile" course. *See Liguori,* 438 F.2d at 665. Moreover, as we observed in an analogous context in *Loschiavo:* "To say that in such circumstances the system of justice can provide no remedy because of a court-made rule that failure to take a direct appeal on the specific issue bars all later motions for collateral attack ... indicates a lack of due process in the judicial system." *Loschiavo,* 531 F.2d at 666.

Because *McNally* overrules our prior decisions holding certain conduct under the mail fraud statute criminal, reversing years of circuit precedent, we conclude that it should be applied retroactively in Ingber's case.[2] For the reasons that follow, we decline to disturb Ingber's conviction for the sewer fraud scheme (count five), but affirm Chief Judge Brieant's grant of section 2255 relief for the election fraud conviction (count nine).

*Count Five*

Count five of the indictment alleged alternative purposes for the sewer fraud scheme: deprivation of the citizens' rights to honest services and pecuniary gain for Scaffold. Judge Brieant found substantial evidence supporting the latter ground, including evidence of accelerated payments to Scaffold, in violation of established procedures, and early delivery of equipment shifting the company's contractual burdens to the town. In addition, it is apparent that Scaffold, a family company, would never have received the contract (with its attendant profits) if Ingber had not concealed his conflict of interest. *See* N.Y.Gen.Mun.Law § 801 (McKinney 1974) (municipal officer may not have interest in municipal contract over which he exercises powers of approval or authorization).

Ingber claims that he was convicted under count five solely because of his conflict of interest, which he characterizes as an intangible right of the citizens to honest government. He argues that the profit his family's company realized as a result of the fraud is irrelevant under *McNally,* since the *McNally* defendants also profited from their fraud. Ingber's narrow reading of the *McNally* facts ignores critical distinctions. The Supreme Court expressly observed that in *McNally* (1) the money the defendants made did not come from public coffers, and (2) the jury was never charged to find that defendants had obtained money or property from the Commonwealth of Kentucky through their fraud. 107 S.Ct. at 2881–82. Further, the *McNally* court assumed that Kentucky law did not prohibit the defendants' ownership of an agency that shared in the insurance commissions. *Id.* at 2882 n. 9. In the instant case, the money realized in the scheme came from public coffers; the court's findings were based on a permissible "economic benefit" theory; and Ingber's fraudulent concealment violated New York law. We therefore find the facts of *McNally* sufficiently distinguishable to support a contrary result on count five.

Appellant suggests that Judge Brieant's decision is inconsistent with the court's finding at trial that "[o]nly paragraph 12(b) of Count 1 as incorporated in [Count 5] is found to have been committed knowingly and wilfully beyond a reasonable doubt." Paragraph 12 of count one describes defendants' scheme to defraud the town, and certain state and federal agencies in order to (1) obtain money or property, or (2) deprive the town and these agencies of Ingber's honest services. Paragraph 12(b) describes one of the specific "false and fraudulent pretenses, representations and promises" made in furtherance of the scheme: the defendants' concealment of Ingber's conflict of interest and breach of public trust. Count five of the indictment refers to "the fraudulent scheme described

2. Other circuits have not yet considered this issue. The District of Maryland has ruled that *McNally* applies retroactively to a conviction that was final before the Supreme Court's decision was handed down. *See United States v. Mandel,* 672 F.Supp. 864 (D.Md.1987). Some district courts have ruled against retroactive application. *See United States v. Smith,* 675 F.Supp. 978 (M.D.Pa.1987); *United States v. Callanan,* 671 F.Supp. 487 (E.D.Mich.1987); *United States v. Osser,* Crim. No. 72–384 (E.D.Pa. Oct. 7, 1987) [available on WESTLAW, 1987 WL 14775].

in paragraph 12" as "a scheme or artifice to defraud and for obtaining money or property." Thus, both paragraph 12 and count five include the deprivation of money or property as goals of the fraud. The Judge's finding that 12(b) had been proven beyond a reasonable doubt did not preclude his conclusion that Ingber's breach of public trust had as its goal the deprivation of the town's money or property.

We see no merit in Ingber's argument that paragraph 12(b) of the indictment refers only to intangible rights, thus providing an impermissible basis for his conviction. His contention removes the words of 12(b) from their proper context. Nothing in *McNally* bars conviction for deprivation of money or property through concealment of a conflict of interest, *see United States v. Fagan*, 821 F.2d 1002, 1010–11 & n. 6 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988); *see also Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987) (fraudulent scheme to obtain and use confidential information, a property interest, effected through breach of fiduciary duty, punishable under section 1341). We conclude, therefore, that Ingber's conviction on count five must stand.

*Count Nine*

Where there is doubt as to whether a conviction is predicated on an impermissible ground, that doubt must be resolved in the defendant's favor and the conviction vacated. *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). The jury in this case was charged in the alternative; one of the theories of guilt was based on a right to free and fair elections, impermissible in light of *McNally*. Since the jury was instructed to return a general verdict, Judge Brieant correctly concluded that doubt existed concerning the grounds for the jury's decision.

We agree with the district court that its colloquy with Juror No. 1 did not amount to a special verdict. Given the strong policy against such verdicts, *see United States v. Adcock*, 447 F.2d 1337, 1339 (2d Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 278, 30 L.Ed.2d 252 (1971), we are disinclined to infer their existence from the circumstances. The conversation with Juror No. 1 cannot elucidate our understanding of the jury's deliberations. Under *Stromberg*, Ingber's conviction on count nine must be vacated.

We have considered the parties' remaining arguments and find them without merit.

### CONCLUSION

The judgment of the district court is affirmed. The mandate shall issue forthwith.