**UNITED STATES of America**

v.

**Joseph HOFFER, Defendant.**

**No. 87 Cr. 773 (RJW).**

United States District Court,
S.D. New York.

March 9, 1988.

Rudolph W. Giuliani, U.S. Atty. for the S.D. New York, New York City, (Daniel A. Nardello, Asst. U.S. Atty., of counsel), for the U.S.

Caesar D. Cirigliano, New York City (Paul Davison, of counsel), for defendant.

OPINION

ROBERT J. WARD, District Judge.

Defendant Joseph Hoffer moves pursuant to Rules 29(c) and 33, Fed.R.Crim.P., for a judgment of acquittal or, alternatively, for a new trial. For the reasons hereinafter stated, defendant's motion for a new trial is granted.

## BACKGROUND

Roberta Rivera, a Drug Enforcement Administration ("DEA") agent, had just finished participating in a surveillance operation being conducted by the New York Drug Enforcement Task Force at Newark Airport. It was 3:00 a.m. and she was tired, so she decided to go to a relative's home in The Bronx to sleep. Rivera drove her Official Government Vehicle ("OGV"), which is issued to DEA agents for use in connection with their official duties, to Giles Place in The Bronx. She went to The Bronx rather than to her own home in Nanuet, New York, because her relative's home, where her daughter was also staying, was closer to the on-going surveillance. Although Rivera's surveillance shift had ended for the evening, she was on call and could be summoned back at any time.

At trial, the Government presented evidence that at approximately 3:30 a.m., the defendant approached Rivera when she was parking the OGV and was checking the distance of the vehicle from a fire hydrant on Giles Place. He placed a metal object to her throat (which he described as a gun) and threatened her with serious bodily injury. The defendant proceeded to throw her onto the front seat of the OGV and punch her in the face and body while demanding her purse. After Rivera handed over her purse, the defendant requested her car keys which were still in the ignition. She relinquished the keys and the defendant punched her a final time and fled. After the incident, Rivera got up from the seat of the OGV, chased the defendant, and after he ignored her order to halt, fired three shots at the defendant in an effort to stop him. One bullet struck the fleeing defendant in the right buttock. Rivera found the defendant seated on the ground between two parked cars and held him at gunpoint until the police arrived.

At trial, the jury convicted Hoffer of violating 18 U.S.C. § 111. Defendant argues that the Court should set aside the jury's verdict and direct the entry of a judgment of acquittal because there was insufficient evidence for the jury to find that Rivera was engaged in the performance of her official duties at the time of the incident. Alternatively, Hoffer requests a new trial on the ground that the jury instruction given by the court permitted the jury to convict the defendant on an erroneous legal theory.

## DISCUSSION

### I. *Engaged in the Performance of Official Duties*

Title 18 U.S.C. § 111 provides in pertinent part:

> Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

While the statute does not require the government to prove that one who attacks a federal official be aware of the victim's official status, *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), it does require that it be proved that the victim was at the time engaged in or attacked on account of the performance of his official duties. 18 U.S.C. § 111. As defined by the Second Circuit, "engaged in ... the performance of his official duties" is "simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own." *United States v. Heliczer,* 373 F.2d 241, 245 (2d Cir.), *cert. denied,* 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967).

In *United States v. Boone,* 738 F.2d 763 (6th Cir.), *cert. denied,* 469 U.S. 1042, 105 S.Ct. 528, 83 L.Ed.2d 416 (1984), defendant Boone was driving down a Cincinnati street in the evening when he saw a woman walking along the sidewalk. The defendant left his car, pushed the woman to the ground, and stole her purse. The woman was Cornelia Kennedy, a judge of the United States Court of Appeals for the Sixth Circuit. The judge had come to Cincinnati from her home in Detroit for the purpose of hearing oral argument on cases the fol-

lowing morning. At the time of the assault, Judge Kennedy was walking to the federal courthouse to use the library. Although the defendant claimed that the Judge was not acting in her official capacity at the time of the assault, the Sixth Circuit disagreed, finding that the "parameters of the statutory requirement that a federal official covered by the act must be engaged in the performance of his official duties are inherently fluid." *Id.* at 765. In analyzing the relevant factors, the Court stated:

> Here we need only ask whether Judge Kennedy could fairly be said to have been discharging her mission as a federal appeals court judge at the time of the attack. The answer is clear given the duties of such a judge. She was in Cincinnati only because she was required by her judicial position to be there so as to discharge her obligation to hear arguments the following morning. We need not decide whether that fact alone would be sufficient to fulfill the performance requirement of the statute because Judge Kennedy was also walking to the federal courthouse to do legal research for her sitting the next morning. *The totality of the activity, in our view, was sufficiently related to the present performance of her judicial duties to fulfill that requirement of the statute.*
>
> It would be difficult to imagine a much closer involvement in the discharge of her obligation as a circuit judge unless we are to conclude that the statute does not apply beyond the courthouse boundaries. We are not prepared to take such a narrow view of the statute.

*Id.* at 765 (emphasis added).

Similarly, in the present case, the Court finds that, particularly when assessed in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the circumstances under which Rivera was attacked are sufficient as a matter of law to sustain Hoffer's conviction. Contrary to the defendant's assertion, *Boone* does not require the victim be en route to a place of official obligation, but looks instead to the totality of the victim's activity as it relates to the performance of her official duties. It is clear to the Court that the totality of Agent Rivera's activity, as presented during the trial, is sufficiently related to the present performance of her duties as a DEA agent, for the jury to find the statutory requirement of being "engaged in" the performance of official duties fulfilled.

■ The evidence at trial indicated Rivera was acting in furtherance of her employment throughout the evening. Although the defendant argues that Rivera was not present in The Bronx because her official responsibilities required her to be there, this Court, in refusing to dismiss the indictment, and the jury, in convicting Hoffer, reached the opposite conclusion. Rivera was in The Bronx precisely because it was necessary to the adequate performance of her job. At the time of the incident, Rivera had just finished active participation in a government surveillance. It was 3:00 a.m. and Rivera knew that, in order to perform her duties properly later that same day, she would need to get rest. By going to The Bronx, Rivera would not only get more rest than she would have been able to get if she went to Nanuet, but also be more easily available if she was called back for additional surveillance. Therefore, her decision to drive to The Bronx, the closest possible location where she could get rest and still be easily accessible, was directly related to her job as a DEA agent and was well within the scope of what she was employed to do. There is no question that Rivera's employer acquiesced in her utilization of the OGV when she left the scene of the surveillance to rest.

Moreover, the defendant attacked Rivera when she was parking an OGV and at least part of the actual assault took place inside the government vehicle, with the defendant ultimately taking the keys to the government vehicle. This circumstance places Rivera within the compass of doing one of the things that she was employed to do— utilizing her OGV. A strong argument can also be made that Rivera was engaged in the performance of her official duties by

properly attempting to prevent theft of government property. *See United States v. Stephenson,* 708 F.2d 580, 581 (11th Cir. 1983).

Finally, as a DEA agent, Rivera was on call throughout the entire period and, thus, under the indirect control of her employer at all times. Although the defendant argues that Rivera made a unilateral decision to go to The Bronx and was free to travel as she wished, it is clear to the Court that Rivera was not engaged in a personal frolic of her own. Due to the location of the surveillance, her long hours, and the fact that she was on call, Rivera's freedom to travel was, in reality, quite limited.

Accordingly, having found the jury's verdict to be supported by the evidence, the Court denies the defendant's motion for a judgment of acquittal.

## II. *Instructions to the Jury*

The defendant argues that the Court erred in instructing the jury to convict him if the jury found that Rivera was "engaged in or on account of the performance of her official duties" at the time of the assault. In its instruction, the Court stated in pertinent part:

> In order to find the defendant guilty of the crime charged in the indictment, you must find the following elements beyond a reasonable doubt: ... Four, that at the time Ms. Rivera was *engaged in or on account of the performance of her official duties.*
>
> ....
>
> The fourth element that you must find beyond a reasonable doubt before you can convict the defendant is that at the time of the alleged assault the *victim was engaged in or on account of the performance of her official duties. You may find from the totality of the evidence that the victim was so engaged if you find that at the time of the alleged assault she was doing what she was employed to do.* On the other hand, if you find that the victim was involved in a personal venture or activity of her own, you must find that she was not engaged in or on account of the performance of her official duties, and you must

acquit the defendant of the crime charged.

Tr. at 115, 118 (emphasis added).

■ The charge given by the Court was taken verbatim from Modern Federal Jury Instructions Criminal (MB) v. 1, at ¶ 14.01. The volume indicates that the portion of the charge at issue was adapted from a charge used by Judge Connor and approved by the Second Circuit in *United States v. Reid,* 517 F.2d 953 (2d Cir.1975). Despite this fact, the Court believes that in the context of the instant case the charge given to the jury was incorrect and potentially prejudicial.

The problem with the charge as given by the Court is that the "on account of" language was inapposite to the facts of the case and, therefore, should have been omitted from the charge. The Court's inclusion of the "on account of" language when the facts of the case did not support such an instruction impermissibly broadened the scope of statutory liability to the defendant's detriment.

An examination of the language of the statute and the case law indicates that 18 U.S.C. § 111 sets forth alternative theories of liability: one theory applying when a federal officer is assaulted "while engaged in" the performance of his duties and the other theory applying when a federal officer is assaulted "on account of" the performance of his duties. With respect to the second theory, the Government must prove that the assault was motivated by the performance of official duties and not that the official is actually engaged in the performance of such duties, as is required by the first theory. *See United States v. Velarde,* 528 F.2d 387 (9th Cir.1975), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1513, 47 L.Ed.2d 765 (1976). During Hoffer's trial, no evidence was presented indicating that Hoffer attacked Rivera "on account of" her duties as a DEA agent. Nothing in the record supports the conclusion that Hoffer either knew Rivera was an agent or attacked her on account of any official function she was performing as an agent. Rather, Hoffer simply attacked Rivera when she was parking her OGV. Accord-

ingly, as a matter of law, the second theory of liability, requiring the defendant attack the victim "on account of" official duties, was not supported by the facts of the case.[1] Thus, the Court erred by permitting the jury to consider both theories and, under the circumstances, a new trial is appropriate.

■ Moreover, a new trial should be granted because the actual instruction given by the Court altered the grammatical context of the statutory language by making the victim, rather than the defendant, the person who must act on account of the performance of official duties.[2] Placed in the context of the particular facts at issue, the Court's instruction improperly broadened the scope of liability under the statute because it implied that it was Rivera who had to be acting on account of official duties rather than Hoffer. Specifically, the Court's use of the "on account of" language invited the jury to find Hoffer guilty if Rivera was parking her car on Giles Place on account of having performed her duties as an agent earlier in the evening. The instruction as written is incorrect because, as noted above, the language of the statute contemplates the motive of the attack being the performance of official duties by the federal official, i.e., the assailant must attack the victim because of what the victim is doing.

*United States v. Hohman*, 825 F.2d 1363 (9th Cir.1987) clearly supports this interpretation of the statute. In *Hohman*, a park ranger was assaulted after ordering the defendant to remove his dog from a beach because it violated National Park Service regulations for the dog to be there. *Id.* at 1364. Sustaining Hohman's conviction, the Ninth Circuit stated:

> Here, the evidence was sufficient to satisfy either prong of § 111.... When [the ranger] asked Hohman to comply with local regulations by removing the dog, he was "engaged" in the performance of his duties. When Hohman struck Wilson, it was "on account" of that performance.

*Id.* at 1365. Similarly, *U.S. v. Velarde, supra*, 528 F.2d at 389, indicates that it is the defendant who must assault the government official on account of his or her official duties rather than the victim being at the location of the assault because of official duties. In *Velarde*, an off-duty agent was attacked while he was attending a wedding when the attacker recognized the victim as an agent. The Court noted that he was "singled out for the treatment he received because he was an agent of the Drug Enforcement Administration." *Id.* The Ninth Circuit affirmed the judgment of conviction even though the agent was undoubtedly not engaged in performance of official duties at the time of the attack because the defendant attacked the agent on account of his being an agent, i.e., on account of his official duties.

A new trial is also appropriate because the circumstances surrounding the deliber-

---

1. The Government apparently recognized this fact as the Grand Jury indictment only reflected the "engaged in" prong:

> The Grand Jury charges:
> On or about September 8, 1987, in the Southern District of New York, JOSEPH HOFFER, the defendant, unlawfully, wilfully and knowingly did, with a dangerous weapon, forcibly assault, intimidate and interfere with a person designated in Title 18, United States Code, Section 1114, to wit, an agent of the Drug Enforcement Administration, while that person *was engaged in the performance of her official duties.*
> (Title 18, United States Code, Section 111.)

(emphasis added).

2. The interpretation that it is the defendant who must be acting on account of the victim's official duties is supported by the legislative history of the statute. The statutory predecessor of 18 U.S.C. § 111, § 2 of the Act of May 18, 1934, c. 299, 48 Stat. 781, was written in a more lucid fashion:

> Whoever shall forcibly resist, oppose, impede, intimidate, or interfere with any [federal officer] *while engaged in the performance of his official duties, or shall assault him on account of the performance of his official duties,* shall be fined not more than $5,000, or imprisoned not more than three years, or both.

(emphasis added). The House Report accompanying the bill explained the language as follows: "The second paragraph imposes a penalty for forcibly resisting or interfering with any such Federal officer while engaged in the performance of his official duties, or for assaulting him on account of the performance of his official duties." H.R.Rep. No. 1455, 73d Cong., 2d Sess. (1934).

ations indicate that the jury was, in actuality, confused by the charge as it related to the facts of the case. After deliberations had begun, the jury sent the Court a note which read: "Will the Court supply the jury in writing with the point number 4 of the five-element charge, if not possible in writing, please read again." The jury in the same note again requested the same material: "Will the Court also supply the jury in writing with the judge's elaboration of 'in performance of or on account of her duties'?" At this point, the Court reread the relevant portion of the charge to the jury. At 11:05 a.m., on the second day of deliberations, the jury sent the Court a note which stated: "The jury would like to hear point 4 of the 5 point charge regarding performing her duty or on account of her job along with the judge's subsequent elaboration of the point specifically referring to the implications of doing what one is employed to do or acting for personal reasons. Can the Judge offer any further explanation of these points beyond what we have already heard?" Following a lengthy colloquy among the Court, the Government, and the defendant's counsel, in which the defense counsel objected to any further elaboration beyond what the Court had determined was appropriate in the first instance, the Court responded to the jury's question as follows:

Ladies and gentlemen, I am going to respond in two parts. The first part is to read for you the portions of the charge which respond to the first part of your note. The second is to instruct you with a further explanation in response to the second part of your note.

Turning to the first part of your note, the fourth element.

That at the time Ms. Rivera was *"engaged in or on account of the performance of her official duties."* Let me read that again: That at the time Ms. Rivera was *"engaged in or on account of the performance of her official duties."*

I go on from a subsequent point in my charge. The fourth element you must find beyond a reasonable doubt before you can convict is that at the time of the

alleged assault the *victim was engaged in or on account of the performance of her official duties.*

*You may find from the totality of the evidence that the victim was so engaged if you find that at the time of the alleged assault she was doing what she was employed to do.* On the other hand, if you find that the victim was involved in a personal venture or activity of her own, you must find that she was not engaged in or on account of the performance of her official duties and you must acquit the defendant of the crime charged.

Ladies and gentlemen, that completes a rereading of the portions of the charge. I will now turn to that second question that you have, "Can the Judge offer any further explanation of these points beyond what we have already heard?"

My response to that question is: Engaged in the performance of her official duties is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within the compass of what she was employed to do. You should consider whether the government has demonstrated beyond a reasonable doubt that the totality of the activity was sufficiently related to the present performance of her duties as a Drug Enforcement Administration agent to fulfill this requirement of the statute.

Tr. at 11–13. Upon request, the Court reread the last two paragraphs above to the jury. Shortly thereafter, at 11:45 a.m., the jury reached a verdict, finding the defendant guilty of simple assault under the statute.

The Court believes that its inclusion of the "on account of" language throughout the proceedings had the possibility of confusing the jury. The jurors undoubtedly had difficulty comprehending the "engaged in or on account of" language as they repeatedly requested repetition and clarification of the instructions with respect to this element. Even though the Court stressed the "engaged in" prong in its final clarifying instructions to the jury, the

Court did not clarify the distinction between the two prongs, or discourage the jury from using the "on account of" prong in reaching its verdict. While the Court believes that it is likely that the jury convicted Hoffer because they found that Rivera was engaged in the performance of her official duties, the Court acknowledges that it is possible that the jury erroneously convicted Hoffer because Rivera was on Giles Place on account of her official duties earlier that evening. "Where there is doubt as to whether a conviction is predicated on an impermissible ground, that doubt must be resolved in the defendant's favor and the conviction vacated." *Ingber v. Enzor*, 841 F.2d 450, 456 (2d Cir.1988) (citing *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931)).

Inasmuch as it is impossible to tell whether the jury properly focused on whether Rivera was "engaged in the performance of her duties," and convicted the defendant on this ground, the doubt must be resolved in favor of Hoffer and his conviction must be vacated. Accordingly, the defendant's motion for a new trial is granted.

## CONCLUSION

The Court concludes that the erroneous jury instruction allowed the jury to convict Hoffer on an impermissible ground, thereby denying him his right to due process of law. Accordingly, Hoffer's conviction is vacated and the Court grants the defendant a new trial.

It is so ordered.