**UNITED STATES of America**

v.

**Gabriel REGUER, Defendant.**

**No. CR–88–155–02 (CPS).**

United States District Court,
E.D. New York.

Jan. 9, 1995.

Stuart J. Grossman, Grossman, Lavine & Rinaldo, Forest Hills, NY, for Gabriel Reguer.

Kelly A. Moore, U.S. Atty's Office, Crim. Div., Brooklyn, NY, for U.S.

## MEMORANDUM AND ORDER

SIFTON, Chief Judge.

Gabriel Reguer ("Reguer"), after pleading guilty to a charge of causing his bank to fail to file currency transaction reports in violation of 31 U.S.C. §§ 5313 and 5322(a), now moves, *pro se*, to expunge his conviction and recover amounts paid for fines and restitution in light of the Supreme Court's decision in *Ratzlaf v. United States*, —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). The government opposes Reguer's motion, contending that *Ratzlaf* does not apply to Reguer's conviction and that, even if it did, Reguer would only be entitled to a trial on the underlying information. For the reasons discussed below, Reguer's application is granted. His plea and conviction are vacated, and the parties are directed to appear on January 31, 1995, at 4:30 p.m. to set a date for trial.

### BACKGROUND

The following facts are drawn from a stipulation signed at the time of sentencing by Reguer and the government setting forth facts to be considered by the Court in sentencing Reguer. In 1986 Reguer sold a counterfeit version of a rare Passover Hag-

gadah to an unsuspecting buyer. The Haggadah recounts the story of the exodus of the Jews from Egypt and is used during the Passover services. Reguer received $59,800 in cash for the Haggadah.

Reguer then went to a bank to deposit the money and was informed that a single deposit of that size would be reported to the federal government. Reguer then "structured" his deposits into smaller amounts so that no individual deposit would trigger the reporting requirements. Reguer contends that he was concerned that a report of the deposits would lead the government to believe that he was a drug dealer. Subsequently, Reguer made two unsuccessful attempts to sell a counterfeit Haggadah to other buyers.

In 1988 a grand jury indicted Reguer and his brother-in-law for mail fraud. After a jury was selected and the government had made its opening statement, Reguer decided to plead guilty to an information charging him with violating 31 U.S.C. §§ 5313, 5322(a) and 18 U.S.C. § 2 by causing The First National Savings Bank to fail to file a currency transaction report. Reguer maintained, however, that he was merely acting for his brother-in-law and did not know that he was dealing in counterfeits. In addition, Reguer admitted that he "structured" his transaction to avoid the reporting requirements, but contended that he was never aware that it was a crime to do so. Reguer was sentenced to three years of probation and a fine of $150,-000. Reguer was also ordered to pay restitution to the victims, but that aspect of the sentence was vacated upon consent of the government because Reguer's offense did not cause direct loss to the victims.

Reguer subsequently sent a letter to the Court seeking to expunge his conviction and recover amounts paid in restitution and towards the fine. Reguer contends that his conviction must be overturned in light of the Supreme Court's holding in *Ratzlaf v. United States* that a defendant is not guilty of structuring under 31 U.S.C. § 5324(3) [1] unless he knew that his actions were illegal. Reguer continues to maintain, as he did at sentencing, that, although he structured his deposits

to avoid the reporting requirements, he did not know that he was committing a crime.

Upon receipt of Reguer's letter, the Court directed the government to show cause why the relief requested should not be granted. The government contends that the *Ratzlaf* decision does not apply to Reguer because he was not convicted under 31 U.S.C. § 5324(3) but under 31 U.S.C. § 5313. The government argues that a defendant need only be shown to have been aware of and intended to avoid the reporting requirement in order to prove a willful violation of section 5313. The government asserts that Reguer's conviction may be distinguished from that of the petitioner in *Ratzlaf* because the conduct prohibited by section 5324(3), the section at issue in *Ratzlaf*, is the structuring of transactions and not, as under § 5313, causing a bank to fail to file the required reports. Finally, the government contends that, even if the *Ratzlaf* decision adds the element of knowledge to the crime to which Reguer pleaded guilty, Reguer's relief would be limited to allowing him to withdraw his guilty plea and proceed to trial on the underlying information. The government states that Reguer would then be entitled to a jury instruction that the government had to prove that Reguer knew that the structuring of his transactions was illegal.

## DISCUSSION

As an initial matter, since Reguer was never sentenced to a term of imprisonment and has completed his term of probation, his letter to the Court cannot be construed as a petition for habeas corpus. He still may seek relief, however, if, following the generous pleading standards to be afforded to *pro se* litigants set forth in *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the letter is considered as a petitioner for a writ of error *coram nobis*. In *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954), the Supreme Court made clear that a federal district court is empowered to issue a writ of coram nobis, pursuant to the All–

---

1. Sections 5324(1)–(3) have been recodified as 5324(a)(1)–(3). *See Ratzlaf,* — U.S. at — n. 5, 114 S.Ct. at 659 n. 5.

Writs Act, 28 U.S.C. § 1651(a), "under circumstances compelling such action to achieve justice." The Court recognized that at times there is a need for this writ because "the results of the conviction may persist," even when a sentence has been completely served. *Morgan,* 346 U.S. at 512, 74 S.Ct. at 253. The writ "is used to attack allegedly invalid convictions which have continuing consequences." *United States v. Stoneman,* 870 F.2d 102, 105–106 (3d Cir.1989). According to the government, as of November 1993 Reguer still owed over $200,000 in fines and interest. Reuger's continuing obligation to pay the fines imposed on him satisfies the continuing consequences requirement of the writ.

■ Despite the government's argument to the contrary, *Ratzlaf* has indeed added an element of knowledge to the crime to which Reguer pleaded guilty. In *Ratzlaf,* the Supreme Court held that by virtue of 31 U.S.C. § 5322(a), the enforcement provision of the Currency and Foreign Transactions Reporting Act, a violation of the antistructuring provision of the Money Laundering Control Act of 1986, 31 U.S.C. § 5324(3), occurs only when a defendant has "willfully violated" that section. Section 5322(a) provides:

> A person willfully violating this subchapter [31 U.S.C. §§ 5311 *et seq.*] or a regulation prescribed under this subchapter (except section 5315 of this title or a regulation prescribed under section 5315) shall be fined not more than $250,000 or imprisoned for not more than five years or both.

The Court held that the willfulness requirement of section 5322(a) requires that the government show an intent to do the illegal act with the knowledge that the act itself was illegal. Thus the Court held that the petitioner in *Ratzlaf* could not have been found guilty of the structuring crime with which he was charged without a showing that he not only knew that he was evading the reporting requirements but that he knew it was a crime to do so.

In reaching its decision, the Court relied upon the fact that various Courts of Appeals had construed the willfulness requirement of section 5322(a) to mean that the defendant had to have both knowledge of the reporting requirement and a specific intent to commit the crime, i.e., "a purpose to disobey the law." *Ratzlaf,* —— U.S. at ——, 114 S.Ct. at 659. In particular, the Court cited approvingly *United States v. Eisenstein,* in which the Eleventh Circuit held that a willful violation of § 5313's reporting requirement for cash transactions requires "'proof of the defendant's knowledge of the reporting requirement and his specific intent to commit the crime,'" 731 F.2d 1540, 1543 (11th Cir.1984) (quoting *United States v. Granda,* 565 F.2d 922, 926 (5th Cir.1978)), and *United States v. Dichne,* 612 F.2d 632, 636 (2d Cir.1979), in which the Second Circuit held that a violation of currency reporting requirements of 31 U.S.C. § 5316 (concerning transporting money into or out of the United States) was shown only with proof that the defendant knew of the reporting requirement and intended to commit the crime. The Supreme Court held that the "willfulness" requirement of § 5322(a) should be read consistently throughout the statute, rejecting the contention that structuring itself is so inherently evil that the very act of engaging in structuring satisfied the willfulness requirement.

In light of these decisions and, in particular, the decision in *Eisenstein,* the government's argument that the decision in *Ratzlaf* applies only to 31 U.S.C. § 5324 is unpersuasive. Section 5322, the enforcement provision on which the Supreme Court based its decision in *Ratzlaf,* is the same enforcement provision used against Reguer to make his actions a crime. The *Ratzlaf* analysis extends the willfulness requirement to all the subchapters of the Currency and Foreign Transactions Reporting Act, including section 5313.

Nor is it of any significance that Reguer's criminal liability arose as the result of 18 U.S.C. § 2(b) rather than directly under section 5313. Section 5313 creates the reporting requirement that is applicable to banks and other such institutions. Section 2(b) makes it a crime to "willfully cause an act to be done which if directly performed ... by another would be an offense against the United States." While "willfulness" under section 2 might not require knowledge of the illegality of the act, criminal liability does not attach to

failure to report under section 5313 unless there was knowledge of the illegality of the act. The *Ratzlaf* Court made it clear that its construction of "willfully" in section 5322 applies uniformly to all the provisions of the Currency and Foreign Transaction Act. *Ratzlaf,* ——— U.S. at ———, 114 S.Ct. at 660 (citing *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 112 S.Ct. 2589.) As the Court noted, "[a]scribing various meanings to a single iteration of [§ 5322(a)'s requirement]—reading the word differently for each code section to which it applies—would open Pandora's jar." *Ratzlaf,* ——— U.S. at ———, 114 S.Ct. at 660. (quoting *United States v. Aversa,* 984 F.2d 493, 498 (1st Cir.1993) (en banc)). Petitioner must be shown to have the *"mens rea"* that would make the action illegal. As the Eleventh Circuit said in a case holding that liability was appropriate under section 2(b) for causing a financial institution to fail to comply with the currency reporting requirements,

> [i]t is but to quote the hornbook to say that in every crime there must exist a union or joint operation of act, or failure to act, and intent. However, this is far from suggesting that the essential element of criminal intent must always reside in the person who does the forbidden act. Indeed, the latter may act without any criminal intent whatever, while the *mens rea* —'willfulness'—may reside in a person wholly incapable of committing the forbidden act. When such is the case, as at bar, the 'joint operation of act and intent' prerequisite to commission of the crime is provided by the person who willfully causes the innocent actor to commit the illegal act. And in such a case, of course, only the person who willfully causes the forbidden act to be done is guilty of the crime.

*United States v. Tobon–Builes,* 706 F.2d 1092, 1101 (11th Cir.1983).

■ Since no evidence was elicited by the Court about petitioner's state of mind (and, in fact, the only information was volunteered by petitioner who stated that he did not know that his conduct was illegal), the retroactive application of *Ratzlaf* to petitioner must be considered. When, as here, the Supreme Court resolves a conflict among circuits as to the interpretation of a statute, the decision is deemed to not be creating new law, but rather as interpreting the law as it should have been interpreted from its inception. *See Strauss v. United States,* 516 F.2d 980 (7th Cir.1975); *United States v. Travers,* 514 F.2d 1171, 1174 n. 4 (2d Cir.1974) ("There are not eleven omnipresences of federal law brooding over various portions of the United States; in the long run there is only one, although some time may be needed to reveal it."); *see also Gates v. United States,* 515 F.2d 73 at 75 (7th Cir.1975) ("A statute does not mean one thing prior to the Supreme Court's interpretation and something entirely different afterwards."). Because knowledge of illegality was, under the Court's holding in *Ratzlaf,* always an element of structuring as a crime, Reguer was convicted without any proof of one of the elements of the crime.

■ That fact alone, however, does not necessarily render Reguer's conviction invalid. In *Sunal v. Large,* 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947), the Supreme Court addressed the issue of whether a change in the law can be used as the basis for a collateral attack on a conviction. At trial, petitioners Sunal and Kulick had been denied the opportunity to raise a specific defense. They were convicted and did not appeal. Approximately nine months after their convictions, the Supreme Court held in a case with comparable facts that the petitioners were entitled to defend themselves on the same grounds which were denied to Sunal and Kulick. When the new rule of law was announced, Sunal and Kulick immediately filed writs of *habeas corpus,* one of which was denied in both the district court and the Court of Appeals. The Supreme Court granted both writs of *certiorari.* While the Court conceded that the new rule of law would have applied to the petitioners had their cases been on appeal at the time the new rule was announced, the Court denied the petitions, reiterating the general rule that "the writ of *habeas corpus* will not be allowed to do service for an appeal." *Sunal,* 332 U.S. at 178, 67 S.Ct. at 1590 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 274, 63 S.Ct. 236, 240, 87 L.Ed. 268

(1942)). While the Court stated that there were exceptional circumstances where a writ should be issued even when the appellate route was not fully pursued, the Court found that Sunal and Kulick's situation was not exceptional. The Supreme Court ruled that, "if [petitioners] had pursued the appellate course and failed, their cases would be quite different. But since they chose not to pursue the remedy which they had ... they should not be allowed to justify their failure by saying they deemed any appeal futile." *Sunal*, 332 U.S. at 181, 67 S.Ct. at 1592.

In *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), the Court did apply a change in substantive law retroactively on collateral attack in a case where the petitioner raised the issue on direct appeal. The Court held that

> *Sunal* cannot be read to stand for the broad proposition that nonconstitutional claims can never be asserted in collateral attacks upon criminal convictions. Rather, the implication would seem to be that, absent the particular considerations regarded as dispositive in that case, the fact that a contention is grounded not in the Constitution, but in the 'laws of the United States' would not preclude its assertion in a § 2255 proceeding.

*Davis*, 417 U.S. at 346, 94 S.Ct. at 2305. The Court reasoned that, if due to a novel decision by the Supreme Court a conviction and punishment are for an act that the law does not make criminal, "[t]here can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief." *Davis*, 417 U.S. at 346–347, 94 S.Ct. at 2305. It has been held that the "logic of the *Davis* opinion applies with equal force to petitions for writ of error *coram nobis* based on non-constitutional changes in the law after trial and appeal." *United States v. Mandel*, 672 F.Supp. 864 (D.Md.1987); *see Travers*, 514 F.2d at 1173 n. 1 ("Although the *Davis* case arose under 28 U.S.C. § 2255 the standards applied in federal *coram nobis* are similar.")

In *Travers*, the Second Circuit applied a non-constitutional change in the law retroactively to a petitioner who filed a writ of error *coram nobis*. The petitioner was convicted under section 1341, a mail fraud statute, in 1969. Five years later, in *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), the Supreme Court interpreted the statute as only applying to certain types of credit card schemes. Under the interpretation of section 1341 in *Maze*, Travers' act was no longer criminal. He then filed a writ of *coram nobis* seeking to vacate his conviction. The motion was denied, and Travers appealed the decision. The Second Circuit found that, because of the Supreme Court's decision in *Maze*, Travers had been convicted for an act that was not a crime. The Court granted the motion, stating that "the *Davis* holding has been encapsulated as being 'that fundamental notions of fairness are implicated by continued incarceration after a change in judicial interpretation of a statute makes the punished conduct free from sanctions.' " *Travers*, 514 F.2d at 1176 (quoting Note, The Supreme Court, 1973 Term, 88 Harv.L.Rev. 41, 218 (1974)).

However, in light of the Court's holding in *Sunal*, the Court of Appeals limited its decision "to defendants who, like Travers, had gone through the full appellate process." *Travers*, 514 F.2d at 1177. The court decided to "leave to another day the determination of the proper result when less has been done." *Id.* Reguer, unlike Travers, did not make any effort to appeal his conviction. Thus the question is still open whether he can now, having failed to previously pursue his appellate remedies, benefit from the retroactive application of *Ratzlaf.*

In certain circumstances, the Court of Appeals has declined to impose an exhaustion requirement on petitioners who sought the retroactive application of a change in the substantive law despite a failure to pursue the issue on direct appeal.

In *Ingber v. Enzor*, 841 F.2d 450 (2d Cir. 1988), *Ingber* had been convicted of mail fraud. Two of the counts for which he was convicted involved the deprivation of intangible rights and were not connected to property. However, the Supreme Court in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), limited the statute under which he was convicted to the

protection of property rights and overruled established Second Circuit precedent to the contrary. *Ingber*, 841 F.2d at 453. Immediately after the *McNally* decision, *Ingber* filed a habeas petition attacking his mail fraud convictions on the ground that two of the counts for which he was convicted were not connected to property rights. This was an issue which Ingber did not bring up on direct appeal. Noting that by the time of Ingber's trial nearly every appellate decision for in the prior decade had determined that Ingber's conduct was made illegal by the mail fraud statute, the court chose not to penalize him "for failing to challenge such entrenched precedent." *Ingber*, 841 F.2d at 455. The court saw "no value in imposing a responsibility to pursue such a 'patently futile' course," particularly since it would encourage appeals on even well-settled law. *Id.*

Similarly, in *United States v. Liguori*, 438 F.2d 663 (2d Cir.1971), petitioners were convicted of narcotics offenses. At trial the government offered no proof regarding certain elements of the crime, and petitioners made no objection to the use of presumptions covering those elements. The judge incorporated these presumptions in his charge to the jury. In *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), the Supreme Court found that these presumptions violated the due process clause of the Fifth Amendment. Petitioner immediately filed a section 2255 petition attacking his conviction in light of the recent decisions by the Supreme Court in *Leary* and *Turner*. The Court of Appeals stated that although "none of the appellees raised the issue on appeal, we hold that they are not therefore barred from raising it now. At the time of the trials only one case, *Erwing v. United States*, 323 F.2d 674 (9th Cir.1963), had held the presumption ... unconstitutional ... but no other circuit followed this holding and the decision was not binding in this Circuit." *Liguori*, 438 F.2d at 665.

At the time of petitioner's conviction, the Second Circuit had decided *United States v. Heyman*, 794 F.2d 788 (2d Cir.1986), *cert. denied*, 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986) two years earlier. In *Heyman*, the court held a person who willfully caused a financial institution to fail to file a currency transaction report was criminally liable. The court held that "willful" required only that the defendant know of the reporting requirement:

[T]he requirement of § 2(b) that a defendant's acts be 'willful' provides adequate protection for individuals who might unwittingly stumble into a violation of federal law. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 [102 S.Ct. 1186, 1193, 71 L.Ed.2d 362] *reh'g denied*, 456 U.S. 950 [102 S.Ct. 2023, 72 L.Ed.2d 476] (1982) (a scienter requirement may mitigate a law's vagueness with respect to adequacy of notice that specified conduct is proscribed); *Boyce Motor Lines v. United States*, 342 U.S. 337, 342 [72 S.Ct. 329, 331, 96 L.Ed. 367] (1952) ('requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the Regulation would be so unfair that it must be held invalid').

*Id.* at 792. The court then said that "[w]e believe this lends persuasive support to the large number of cases holding that any individual, including a customer, may be held criminally liable for willfully causing a financial institution to fail to file CTRs" and cited the following cases: *United States v. Sans*, 731 F.2d 1521, 1531–32 & n. 12 (11th Cir. 1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985); *United States v. Puerto*, 730 F.2d 627, 632–33 (11th Cir.1984), *cert. denied*, 469 U.S. 847, 105 S.Ct. 162, 83 L.Ed.2d 98 (1985); *Tobon–Builes*, 706 F.2d 1092, 1099–1101 (11th Cir.1983); *United States v. Massa*, 740 F.2d 629, 645 (8th Cir. 1984), *cert. denied*, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *United States v. Richter*, 610 F.Supp. 480, 487–90 (D.C.Ill. 1985); *United States v. Konefal*, 566 F.Supp. 698 (N.D.N.Y.1983). The court specifically distinguished other decisions holding that bank customers could not be liable under section 2(b) on the ground that in those cases the banks were never under any obligation to file reports because the customers made only single deposits at each bank for less than

$10,000. *Id.* at 791–92. In particular, the Court distinguished *United States v. Anzalone,* 766 F.2d 676, 681 (1st Cir.1985), a decision in which the First Circuit noted that the reporting requirements did not specifically prohibit breaking transactions down into smaller amounts to avoid triggering a bank's duty to report. Thus the petitioner was faced with a Court of Appeals precedent holding that a defendant who was aware of the reporting requirement could be found guilty under section 2(b). As the court said in *Loschiavo,* and later in *Ingber,* "To say that in such circumstances the system of justice can provide no remedy because of a court-made rule that failure to take a direct appeal on the specific issue bars all later motions for collateral attack ... indicates a lack of due process in the judicial system." *Ingber,* 841 F.2d at 455 (quoting *Loschiavo,* 531 F.2d at 666).

Accordingly, for the reasons stated above, the petition is granted; petitioner's conviction and plea of guilty are vacated; and the parties are directed to appear on January 31, 1995, at 4:30 p.m. to fix a trial date. *See Perez v. United States,* 315 F.Supp. 972, 974 (S.D.N.Y.1970), *aff'd sub nom. United States v. Liguori,* 438 F.2d 663 (2nd Cir.1971).

SO ORDERED.