I concur with the majority opinion, and I write specially to address the importance of upholding the Legislature's procedural protections of the voting process.
This simple election case concerns a principle at the very heart of the democratic process — the integrity of elections. Voters elect representatives to perform the legislative function of setting public policy through the enactment of statutes. See Ala. Const. 1901, § 46 (providing for the election of legislators); § 42 (investing the Legislature with the legislative power). It is the province of the courts to interpret those statutes to effect the intent of the people's elected representatives. See Ala. Const. 1901, § 42 (investing the Supreme Court and other courts with the judicial power);id. at amend. 328, § 6.01(a) (investing the Unified Judicial System with the judicial power). Nowhere is this fundamental principle of more obvious consequence than in the interpretation of statutes governing the election of those who represent the people.
Section 17-10-4, Ala. Code 1975, provides in pertinent part: "Any applicant may receive assistance in filling out the application as he or she desires, but each application shall bemanually signed by the applicant . . . ." (Emphasis added.) The simple words "shall be manually signed by the applicant" plainly mean that the applicant himself must sign the application for the absentee ballot. The applications in this case were not manually signed by the applicants.[5] Therefore, *Page 409 
the applications are illegal and the ballots obtained thereby should not be counted.[6]
Justice Cook, in his dissent, 710 So.2d at 410, emphasizes that "it is the ultimate act . . . of casting a fraudulentballot" that is the evil. He concludes that the plain meaning of § 17-10-4, which regulates the intermediate step of obtaining the absentee ballot by signing an application, may therefore be ignored. Id. Yet, such an intermediate step can facilitate the ultimate fraud. For example, in Williams v.Lide, 628 So.2d 531, 537 (Ala. 1993), this Court described a use of applications to fraudulently obtain and cast absentee ballots:
 "[Lide] contest[ed] the legality of two absentee votes. Election officials counted those two votes for Williams; however, at trial, both of the voters testified that a man came to their home prior to the November election and told them that he would assist them in voting by absentee ballot. The voters testified that they gave the man their names, addresses, and Social Security numbers. They further testified that the man told them that they would receive absentee ballots in the mail; however, they said, they never received or cast any absentee ballots and never told the man for whom they intended to vote. When shown affidavits allegedly signed by them, they testified that the signatures thereon were not theirs."[7]
The Legislature is not restricted to regulating only the final step in an illegal scheme, but may regulate intermediate steps, steps seemingly innocent in themselves, to combat a danger to the citizenry.[8]
The danger of allowing absentee ballots to be procured by political "agents" for subsequent fraudulent casting can be largely eliminated by requiring that each absentee voter manually sign the application for his individual ballot, thus limiting the use of applications, and ballots, to one per voter. The Legislature, by enacting § 17-10-4, made the policy choice to limit the use of applications to one per voter. Today, this Court respects the Legislature's policy choice, and I concur.
[5] In this case, the applicants were capable of signing the applications, as demonstrated by their signing of the affidavits attached to the ballots. Thus, I need not address the issue of physical incapacity to sign an application.
[6] The 1996 amendment of § 17-10-7, Act No. 96-885, 1996 Ala. Acts, p. 1699, reinforced that section's two-witnesses-or-notarization requirement without adding similar reinforcing language to § 17-10-4 regarding applications for absentee ballots. Justice Cook interprets this amendment to mean that, notwithstanding the plain language of § 17-10-4, the Legislature intended for applications not to be manually signed by the applicant. This interpretation ignores the history that gave rise to the amendment of § 17-10-7. SeeRoe v. Mobile County Appt. Bd., 676 So.2d 1206, 1226 (Ala. 1995) (holding that absentee ballots could be counted even if they failed to comply with the two-witnesses-or-notarization requirement of § 17-10-7). In my view, far from approving this Court's holding in Roe, Act No. 96-885 was an express disapproval of judicial departures from the plain meaning of election statutes.
[7] The fraudulent use of absentee ballot applications has also been noted by other courts. See, e.g., Ingber v. Enzor,664 F. Supp. 814 (S.D. N.Y. 1987) (noting that a municipal official had obtained his office through the use of false applications for absentee ballots), aff'd, 841 F.2d 450 (2d Cir. 1988).
[8] For example, the Legislature may regulate various aspects of driving automobiles in addition to imposing severe punishment for criminally negligent homicide caused by drunk driving. See, e.g., Ala. Code 1975, § 32-6-1 (regulating the driving of automobiles by requiring drivers to obtain licenses); §32-5A-191 (regulating the driving of automobiles by imposing escalating punishments for driving while under the influence of alcohol); § 13A-6-4(c) (regulating the driving of automobiles by imposing class C felony punishment for killing another person with a vehicle while under the influence of alcohol).