William C. BRENNAN, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

Docket 88–2253, No. 134.

United States Court of Appeals, Second Circuit.

Argued Sept. 20, 1988.

Decided Jan. 20, 1989.

Arnold E. Wallach, New York City (Harold Borg, Kew Gardens, N.Y., of counsel), for petitioner-appellant.

Beryl A. Howell, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., John Gleeson, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for respondent-appellee.

Before MESKILL, PIERCE and WINTER, Circuit Judges.

MESKILL, Circuit Judge:

William C. Brennan sought relief under 28 U.S.C. § 2255 (1982), arguing that the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), required the vacatur of his nine wire fraud convictions and also his seventeen other convictions. The United States District Court for the Eastern District of New York, Weinstein, *J.*, granted in part and denied in part the motion, vacating only the wire fraud convictions. *United States v. Brennan*, 685 F.Supp. 883 (E.D.N.Y.1988). Brennan appeals from so much of the judgment as denied his request for relief. We affirm the judgment of the district court.

## BACKGROUND

William C. Brennan, a former Justice of the Supreme Court of the State of New York in Queens County, was convicted, after a jury trial, of twenty-six felonies involving use of his judicial office for the solicitation and acceptance of bribes. Specifically, Brennan was convicted of one substantive count under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 2, 1962(c) (1982), one count of conspiracy under RICO, 18 U.S.C. § 1962(d), nine counts of fraud by wire, 18 U.S.C. §§ 2, 1343 (1982) (wire fraud), fourteen counts of interstate travel in aid of racketeering enterprises, 18 U.S.C. §§ 2, 1952(a) (1982) (Travel Act), and one count of interference with commerce by threats or violence, 18 U.S.C. §§ 2, 1951(a) (1982) (extortion). The facts leading up to these convictions are set out in our earlier opinion, *United States v. Brennan*, 798 F.2d 581 (2d Cir.1986), but we reexamine here the specific details of the convictions challenged on this appeal.

The government offered evidence to show that, between 1972 and 1985, Brennan agreed to fix seven cases in exchange for bribes. The charges of the indictment, however, were limited to Brennan's corrupt

handling of four of these cases, the *Messina, Botta, Romano* and *Polisi* cases. The two RICO counts focused on Brennan's activities in connection with all four of these cases.

Brennan's nine wire fraud and fourteen Travel Act convictions were based only on acts done in connection with the fixing of the *Romano* and *Polisi* cases. Under these two statutes, numerous interstate telephone calls and trips made in connection with the *Romano* and *Polisi* bribery schemes each constituted separate felonies. Phone calls made between Queens or Floral Park, New York and Hallandale, Fort Lauderdale or Miami, Florida by Brennan or his middleman Anthony Bruno formed the bases of Brennan's convictions for both wire fraud and Travel Act crimes. Specifically, the following table shows the fourteen acts that led to Brennan's fourteen Travel Act convictions and nine wire fraud convictions.

*ROMANO* CASE

| Date | Act | Conviction By Count And Statute |
| --- | --- | --- |
| 11/28/80 | Travel from Fort Lauderdale to Queens | Count 3 Travel Act |
| 12/7/80 | Telephone call from Hallandale to Queens | Count 4 Travel Act and Count 11 Wire Fraud |
| 12/7/80 | Telephone call from Queens to Hallandale | Count 5 Travel Act and Count 12 Wire Fraud |
| 12/7/80 | Telephone call from Hallandale to Floral Park | Count 6 Travel Act and Count 13 Wire Fraud |
| 12/9/80 | Telephone call from Hallandale to Queens | Count 7 Travel Act and Count 14 Wire Fraud |
| 12/9/80 | Telephone call from Hallandale to Floral Park | Count 8 Travel Act and Count 15 Wire Fraud |
| 12/10/80 | Telephone call from Hallandale to Queens | Count 9 Travel Act and Count 16 Wire Fraud |
| 1/5/81 | Travel from Fort Lauderdale to Queens | Count 10 Travel Act |

*POLISI* CASE

| Date | Act | Conviction By Count And Statute |
| --- | --- | --- |
| 2/1/85 | Telephone call from Queens to Hallandale | Count 17 Travel Act and Count 23 Wire Fraud |
| 2/2/85 | Travel from Queens to Miami | Count 18 Travel Act |
| 2/13/85 | Travel from Queens to Fort Lauderdale | Count 19 Travel Act |
| 2/17/85 | Travel from Miami to Queens | Count 20 Travel Act |
| 2/20/85 | Telephone call from Queens to Hallandale | Count 21 Travel Act and Count 24 Wire Fraud |
| 2/22/85 | Telephone call from Queens to Hallandale | Count 22 Travel Act and Count 25 Wire Fraud |

App. at 37–38, 42. Additionally, Brennan's activities in connection with the *Polisi* case led to his single extortion conviction. App. at 43.

With respect to Count One, the substantive RICO count, the jury was properly instructed that in order to convict Brennan, they would have to find, *inter alia,* that he had committed at least two predicate acts. App. at 55; *see* 18 U.S.C. §§ 1961(5), 1962(c). The jury had before it a pool of possible predicate acts comprised of twenty-eight alleged violations of state and federal law committed by Brennan. These possible predicate acts included the above-detailed federal wire fraud, Travel Act and extortion offenses that were separately charged under Counts 3–26 of the indictment, together with four alleged instances of Bribe Receiving, in violation of New York state law, N.Y. Penal Law § 200.10 (McKinney 1988), in connection with the *Messina, Botta, Romano* and *Polisi* cases. These twenty-eight acts were divided into four categories corresponding to the four cases the indictment charged Brennan with having fixed. Thus, the pool of acts that could have supported a substantive RICO conviction were:

1. Bribe Receiving in connection with the *Messina* case;

2. Bribe Receiving in connection with the *Botta* case;

3. In connection with the *Romano* case:
   a. Bribe Receiving;
   b. Violation of the Travel Act (also alleged as separate crimes under Counts 3–10);
   c. Wire Fraud (also alleged as separate crimes under Counts 11–16); and

4. In connection with the *Polisi* case:
   a. Bribe Receiving;
   b. Violation of the Travel Act (also alleged as separate crimes under Counts 17–22);
   c. Wire Fraud (also alleged as separate crimes under Counts 23–25);

d. Extortion (also alleged as a separate crime under Count 26).

App. at 55.

The jury was instructed that in order to convict Brennan under the substantive RICO count, they would have to find, *inter alia*, that he had committed at least one of these offenses in the context of at least two separate cases. Thus, using the examples given to the jury by Judge Weinstein, App. at 55–56, finding one *Messina* predicate act (i.e., Bribe Receiving) and any one *Romano* predicate act (e.g., wire fraud) would be sufficient, as would a finding that Brennan committed Bribe Receiving in both the *Romano* and *Polisi* cases. It would not be enough, however, to find only the commission of two *Polisi* predicate acts (e.g., Bribe Receiving and Travel Act).

Following Brennan's conviction, by a general verdict, on all twenty-six counts, Judge Weinstein imposed a sentence of concurrent terms of imprisonment of five years each on the substantive RICO count, the RICO conspiracy count and the extortion count. A consecutive term of five years on the remaining twenty-three counts was suspended, and Brennan was put on probation for an additional five years, subject to the condition that he have nothing further to do with the law, law enforcement or the public trust. Brennan was assessed a fine of $209,000, a RICO forfeiture of $14,000 and a mandatory special assessment of $1,300. *United States v. Brennan*, 629 F.Supp. 283, 306–07 (E.D.N.Y.1986).

Brennan appealed his conviction solely on evidentiary grounds, and we affirmed. *Brennan*, 798 F.2d 581.

Following the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), Brennan filed a petition pursuant to 28 U.S.C. § 2255 seeking the vacatur of all twenty-six of his convictions. Because the jury instructions had permitted the jury to base Brennan's wire fraud convictions on the "intangible rights" theory rejected in *McNally*, Brennan argued that his wire fraud convictions were invalid. After our decision in *Ingber v. Enzor*, 841 F.2d 450

(2d Cir.1988), the government conceded that *McNally* rendered Brennan's wire fraud convictions invalid, and the district court vacated the nine wire fraud convictions. The district court refused, however, to vacate Brennan's seventeen other convictions. Brennan was resentenced, with the only change in his sentence being a reduction of his fine by $9,000 to $200,000 and of his special assessment by $450 to $850. 685 F.Supp. at 887.

Brennan appeals the district court's decision not to vacate the seventeen non-wire fraud convictions. He argues that his two RICO convictions must be vacated because (1) they may have been based on the invalid wire fraud counts, (2) they are invalid under the applicable five year statute of limitations, and (3) they are invalid because the Supreme Court of New York is not an "enterprise" under the RICO statute. Brennan also argues that his Travel Act and extortion convictions must be vacated. We reject Brennan's arguments and affirm the decision of the district court.

## DISCUSSION

### A. *The RICO Convictions*

#### 1. *Effect of Vacating the Wire Fraud Convictions*

On this appeal Brennan claims that the jury instructions made it possible for the jury to base his RICO convictions on the finding that he committed wire fraud in connection with the *Romano* and *Polisi* cases. From this undisputed fact, Brennan draws the much disputed conclusion that his conviction under Count One of the indictment, the substantive RICO count, must be vacated because, in the face of a general verdict, we cannot now know whether that conviction is based on the subsequently invalidated wire fraud counts.

Had the invalid wire fraud counts been the only predicate acts supporting the RICO conviction, that conviction would be subject to invalidation on the ground that it rested on predicate acts that can no longer be considered unlawful in the wake of *McNally*. Indeed, vacating the RICO con-

viction might be required if there were even a possibility that it was supported only by the wire fraud counts, "absent some indication by the jury that its determination of guilt rested on two or more predicate acts that are legally sufficient." *See United States v. Ruggiero,* 726 F.2d 913, 921 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). But there is no such possibility here. It is clear that the RICO conviction is amply supported by the jury's finding numerous other "legally sufficient" predicate acts and that the wire fraud counts could not rationally have been essential to the RICO conviction.

Brennan's argument is flawed. The fourteen Travel Act offenses committed were not only possible predicate acts under Count One; they were also separately charged crimes, for all of which Brennan was convicted by this jury. Thus, we are not left to mere speculation as to the grounds for the substantive RICO conviction, as were the courts in *United States v. Brown,* 583 F.2d 659, 669 (3d Cir.1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979), and *United States v. Holzer,* 840 F.2d 1343, 1352 (7th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988), the cases upon which Brennan relies. Here, the separate Travel Act counts "operated like special verdicts; by finding guilt on [all] those counts the jury also found that [*Romano* and *Polisi* predicate acts] had been shown." *See United States v. Pepe,* 747 F.2d 632, 668 (11th Cir.1984). The fourteen Travel Act convictions show that the jury found that Brennan had committed at least eight predicate acts in connection with the *Romano* case and six predicate acts in connection with the *Polisi* cases.

Under our decision in *United States v. Weisman,* 624 F.2d 1118, 1124 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980), the Travel Act convictions are sufficient to sustain the Count One RICO conviction as long as we find, as a matter of law, that "the jury also found that these [Travel Act] substantive offenses occurred in the conduct of an 'enterprise' engaged in interstate or foreign commerce, as required by section 1962(c)." *See also United States v. Lopez,* 803 F.2d 969, 976–77 (9th Cir.1986), *cert. denied,* 481 U.S. 1030, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1987). Under *Weisman,* the inquiry we must make is whether the jury rationally could have concluded that Brennan's wire fraud acts were committed in the conduct of the enterprise's affairs and at the same time found that his Travel Act offenses were not. If such a finding by the jury would have been irrational, then "even if the [wire fraud] counts were excluded, the jury verdict conclusively established a RICO violation and therefore any error in the inclusion of these counts in the RICO charge was harmless." *See Weisman,* 624 F.2d at 1124; *see also United States v. Parness,* 503 F.2d 430, 438 (2d Cir.), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975).

We agree with the district court that it is even more obvious here than in *Weisman* that the jury's verdict supports the RICO conviction. The jury could not rationally have found that the wire fraud offenses but not the Travel Act offenses occurred in the conduct of the enterprise, the Supreme Court of New York. The very same telephone calls that formed the basis of *every* separate wire fraud count also formed the basis of a Travel Act count. As shown above, the acts underlying wire fraud Counts 11, 12, 13, 14, 15, 16, 23, 24 and 25 correspond exactly to Travel Act Counts 4, 5, 6, 7, 8, 9, 17, 21 and 22, respectively. If, as Brennan asserts, the jury based the RICO conviction on a particular wire fraud predicate act, *e.g.,* the Count Eleven December 7, 1980 telephone call made in connection with the *Romano* case, then the jury necessarily found that that particular phone call was made "in conduct of the enterprise." But in so finding, the jury necessarily found that Count Four, which also served as a *Romano* predicate act and for which Brennan was also convicted, was also committed "in conduct of the enterprise," because it was the very same call. The same analysis applies to every possible *Romano* and *Polisi* predicate act based on wire fraud. Thus, under *Weisman* and in

light of the separate Travel Act convictions, Brennan's Count One conviction cannot rationally be based only on any wire fraud predicate act, because the finding of any wire fraud predicate act necessarily required a finding of a corresponding Travel Act predicate act.

Faced with the clear application of *Weisman*, Brennan argues that our decision in *Weisman* is in conflict with the decisions of other circuits. Brennan relies on *McCulloch v. United States*, —— U.S. ——, 108 S.Ct. 337, 98 L.Ed.2d 364 (1987) (White, *J.,* dissenting from denial of certiorari), where Justice White referred to "the disagreement and uncertainty among the Courts of Appeals" *id.,* —— U.S. at ——, 108 S.Ct. at 338, with respect to the "question of whether a RICO conviction may stand when some—but not all—of a defendant's convictions for the predicate acts which are the basis of his RICO conviction are vacated," *id.,* —— U.S. at ——, 108 S.Ct. at 337.

The applicable decisions of other circuits actually support upholding Brennan's conviction here. *See, e.g., United States v. Zauber,* 857 F.2d 137, 151–54 (3d Cir. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989); *United States v. Anderson,* 809 F.2d 1281, 1284–85 (7th Cir.1987); *Lopez,* 803 F.2d at 976–77; *Pepe,* 747 F.2d at 667–68; *United States v. Peacock,* 654 F.2d 339, 348 (5th Cir.1981), *modified,* 686 F.2d 356 (5th Cir. 1982), *cert. denied,* 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983); *cf. Holzer,* 840 F.2d at 1350–52 (where only one predicate act was also a separate conviction, it "provide[d] one of the two struts that the government needs to support the racketeering conviction," but RICO conviction was vacated because jury could have rationally acquitted defendant of RICO in absence of mail fraud convictions). We have previously said that *Brown,* 583 F.2d 659, the only decision on the other side of the "conflict," is distinguishable from a case such as this one in that *Brown* involved "substantive offenses charged as predicate acts [that] were distinct and hence it was arguably impossible to determine from the verdict which offenses the jury relied upon in finding the pattern of racketeering." *See Weisman,* 624 F.2d at

1124–25. The Third Circuit itself recognized this distinction recently in *Zauber,* 857 F.2d at 151–54. There, the court distinguished its own decision in *Brown* on the ground that *Brown* had involved a situation where it had been impossible to ascertain upon which predicate acts the jury had based RICO convictions. In contrast, in the case before it, the *Zauber* Court examined the jury charge, presumed that the jury had acted rationally and according to its instructions, and concluded that the jury had to have found that the defendants had committed enough non-wire and mail fraud predicate acts to establish a RICO violation. Accordingly, the RICO convictions were affirmed. *Id.*

This case is similarly distinguishable from *Brown.* Far from "distinct," *see Weisman,* 624 F.2d at 1124–25, the Travel Act and wire fraud convictions in this case were so closely related that the jury's basing the RICO conviction only on the latter would have been irrational. As shown above, the Travel Act convictions and their close relationship to the wire fraud acts show that numerous non-wire fraud predicate acts were proved. Under such circumstances, nothing in the *Brown* decision would require invalidating the RICO conviction here, *see Zauber,* 857 F.2d at 151–54, and therefore there appears to be no conflict among the circuits with respect to the situation involved in this case. *See Holzer,* 840 F.2d at 1351 (finding no conflict between the circuits based on the prescient prediction that a Third Circuit court would not use *Brown* to overturn a RICO conviction where jury would have been "acting irrationally if it had acquitted the defendant of the racketeering charge even though two predicate offenses were properly proved").

We thus find that Brennan's Count One substantive RICO conviction remains valid after the vacatur of the wire fraud convictions. Because Brennan's corresponding challenge to his RICO conspiracy conviction is built completely on the alleged invalidity of Count One, we similarly uphold his conviction under Count Two for violation of 18 U.S.C. § 1962(d).

### 2. The Statute of Limitations and the Meaning of "Enterprise"

Brennan raises two other challenges to his RICO convictions which he did not raise in his direct appeal to this Court, one based on the statute of limitations and the other based on the statutory meaning, under RICO, of "enterprise." At trial, Brennan raised the latter argument, but not the former. Because Brennan failed to raise these issues earlier, we must first ask whether he is procedurally foreclosed from doing so now in this collateral proceeding. This question requires consideration of longstanding rules governing procedural foreclosures, along with the more recent development of the cause and prejudice test.

### a. Procedural Foreclosure of Claims in § 2255 Proceedings

As a general rule, the failure to raise a nonconstitutional or nonjurisdictional claim on direct review has long precluded assertion of the claim in a collateral proceeding. *See Stone v. Powell,* 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976); *Davis v. United States,* 417 U.S. 333, 345 n. 15, 94 S.Ct. 2298, 2305 n. 15, 41 L.Ed.2d 109 (1974); *Kaufman v. United States,* 394 U.S. 217, 220 n. 3, 89 S.Ct. 1068, 1070 n. 3, 22 L.Ed.2d 227 (1969); *Sunal v. Large,* 332 U.S. 174, 178–79, 67 S.Ct. 1588, 1590–91, 91 L.Ed. 1982 (1947); *Pacelli v. United States,* 588 F.2d 360, 363 (2d Cir.1978), *cert. denied,* 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979). Nevertheless, in " 'exceptional circumstances,' " even a nonconstitutional or nonjurisdictional error can result in a " 'complete miscarriage of justice' " justifying collateral relief. *Davis,* 417 U.S. at 346–47, 94 S.Ct. at 2305 (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). In such circumstances, as, for example, where a subsequent change in the law has resulted in a petitioner's "conviction and punishment [having been imposed] for an act that the law does not make criminal," *id.* at 346, we have refused to apply the general rule denying relief because of a procedural default. *See, e.g., Ingber,* 841 F.2d at 454; *United States v. Loschiavo,* 531 F.2d 659, 663–67 (2d Cir. 1976).

With respect to constitutional or jurisdictional claims, we have adhered to the rule that a section 2255 petitioner may raise such claims even though they were not raised on direct appeal, unless there is some showing of deliberate delay or bypass. *See Pacelli,* 588 F.2d at 363–65; *see also Grimes v. United States,* 607 F.2d 6, 10 (2d Cir.1979).[1]

In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court held that a state prisoner who had failed to comply at trial with the state's contemporaneous objection rule would have to satisfy the "cause and prejudice" test in order to obtain federal collateral review of the defaulted constitutional claim. While broadening the application of a test that had been articulated in *Davis v. United States,* 411 U.S. 233, 243–45, 93 S.Ct. 1577, 1583–84, 36 L.Ed.2d 216 (1973),[2] and *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), the Court nevertheless explicitly refused to adopt the cause and prejudice test as a universal standard for procedural defaults in all habeas corpus cases, 433 U.S. at 88 n. 12, 97 S.Ct. at 2507 n. 12, and has continued to develop the applicability of the cause and prejudice test on a case-by-case basis. *See Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Reed v. Ross,* 468 U.S.

---

1. Because we find neither of Brennan's two arguments to be constitutional or jurisdictional, *see infra,* we have no occasion to examine whether the deliberate bypass test of *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), remains the proper standard for the procedural foreclosure of constitutional or jurisdictional issues not raised on direct appeal by federal prisoners. *See Norris v. United States,*

687 F.2d 899, 902–04 (7th Cir.1982) (finding deliberate bypass test replaced by cause and prejudice test).

2. In light of the obvious risk of confusion, we note that this *Davis* case is unrelated to *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), cited *supra* and *infra.*

1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Yet, as one commentator has recognized, these "[s]ubsequent decisions [have been] written as if the standard of cause and prejudice governs virtually all questions of procedural default for state and federal prisoners." Meltzer, *State Court Forfeitures of Federal Rights*, 99 Harv.L.Rev. 1130, 1147 (1986).

Despite the different policy concerns regarding federal collateral review of federal as opposed to state proceedings, in *Frady* the Supreme Court made it clear that the cause and prejudice test has some applicability to section 2255 proceedings. *Frady*, 456 U.S. at 167, 102 S.Ct. at 1594. The Court held that a section 2255 petitioner's failure to object to jury instructions at trial constituted a procedural default that barred collateral review in the absence of a showing of cause and prejudice. In light of the applicability of the cause and prejudice test to issues not raised on direct appeal by state prisoners, *see Roman v. Abrams*, 822 F.2d 214, 222 (2d Cir.1987), and in the wake of *Frady*, the question remains as to what extent, if any, the cause and prejudice test governs the reviewability of issues a federal prisoner has failed to raise on direct appeal. A number of courts have followed *Frady* and seen the cause and prejudice test as applicable to issues not raised on direct appeal, seemingly without regard to whether the issues were constitutionally or jurisdictionally based. *See United States v. Shelton*, 848 F.2d 1485, 1490 (10th Cir.1988); *Lilly v. United States*, 792 F.2d 1541, 1544–46 (11th Cir. 1986) (implicitly by majority and explicitly by dissent); *United States v. Dunham*, 767 F.2d 1395, 1397 & n. 2 (9th Cir.1985). Others have continued to hold that nonconstitutional or nonjurisdictional claims are generally not reviewable if not raised on direct appeal. *See Richards v. United States*, 837 F.2d 965, 966 (11th Cir.1988) (per curiam); *United States v. Hanyard*, 762 F.2d 1226, 1230 n. 1 (5th Cir.1985); *Norris v. United States*, 687 F.2d 899, 900 (7th Cir.1982).

Having reviewed the general rules governing procedural foreclosure, we now consider the reviewability of Brennan's statute of limitations and enterprise arguments.

### b. *Procedural Foreclosure of Brennan's Statute of Limitations Claim*

Brennan argues that his RICO and RICO conspiracy convictions are barred by the five year statute of limitations applicable to RICO prosecutions. *See* 18 U.S.C. § 3282 (1982); *United States v. Walsh*, 700 F.2d 846, 851 (2d Cir.), *cert. denied*, 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983). Because the government filed the indictment in this case on July 26, 1985, it therefore had to show that a predicate act occurred after July 26, 1980 in order to convict Brennan of the substantive RICO count. *See Walsh*, 700 F.2d at 851; *United States v. Persico*, 832 F.2d 705, 714 (2d Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1995, 1996, 100 L.Ed.2d 227 (1988). With respect to the RICO conspiracy count, the government had to show that the "accomplishment or abandonment of the objectives of the conspiracy" occurred after July 26, 1980. *See Persico*, 832 F.2d at 713.

Brennan's statute of limitations argument parallels his argument based on *McNally*. He claims that the jury instructions permitted the jury to base the substantive RICO conviction on *Messina* and *Botta* predicate acts alone. Brennan maintains that because these acts occurred more than five years before the filing of the indictment, the substantive RICO conviction is therefore invalid. With respect to the RICO conspiracy count, he urges us to adopt the dissenting view of Judge Newman in *Persico*, 832 F.2d at 721, and require of the government a showing of a conspiracy to commit a predicate act within the five year limitations period.

■ We need not consider the effect of Brennan's failure to raise this issue on direct appeal because this argument was procedurally forfeited at trial. Because Brennan was required to raise this issue at trial, and he did not, *see* 685 F.Supp. at 887,

he is foreclosed from raising it on collateral review.[3]

Brennan's statute of limitations argument should have been raised as an affirmative defense at trial. *See Walsh*, 700 F.2d at 855–56; *see also United States v. Karlin*, 785 F.2d 90, 92–93 (3d Cir.1986), *cert. denied*, 480 U.S. 907, 107 S.Ct. 1351, 94 L.Ed.2d 522 (1987). Simply pleading not guilty did not put the statute of limitations in issue. *Walsh*, 700 F.2d at 856. More specifically, at trial, Brennan should have objected on statute of limitations grounds to the jury instruction of which he now complains. *See id.*, 700 F.2d at 855. Under Fed.R.Crim.P. 30:

> No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

We have only recently noted this Rule's "important purpose of relieving the district court of the significant burden of having to guess which differences in language [in the jury instructions] are considered material by the parties." *United States v. Friedman*, 854 F.2d 535, 555 (2d Cir.1988). In this way the Rule " 'give[s] the trial court an adequate opportunity to correct any mistakes in the jury charge.' " *Id.* (quoting *United States v. Hamilton*, 684 F.2d 380, 385 (6th Cir.), *cert. denied*, 459 U.S. 976, 103 S.Ct. 312, 74 L.Ed.2d 291 (1982)). Had Brennan raised the statute of limitations argument before the jury retired, any alleged errors in the charge that permitted a time-barred conviction could have been corrected.

Because Brennan failed to object to the jury instructions at trial, as required by Rule 30, the proper standard for procedural default in these circumstances is clearly established—the cause and prejudice test. *Frady*, 456 U.S. at 167–68, 102 S.Ct. at

1594; *United States v. Dukes*, 727 F.2d 34, 43 (2d Cir.1984). "Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, [Brennan] must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 167–68, 102 S.Ct. at 1594.

We need not consider the issue of "prejudice," because Brennan has failed to show any "cause" excusing his procedural default. *See Smith v. Murray*, 477 U.S. at 533, 106 S.Ct. at 2665. Brennan's only argument in this regard attempts to wrap his statute of limitations argument in the guise of a post-*McNally* development. He maintains that the statute of limitations argument "made at the time of trial would [have been] quite futile because *McNally* and *Carpenter [v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987),] were not decided." Br. of Appellant at 14. Actually, however, while it is possible that the question of the effect of *McNally* on Brennan's convictions may have directed his counsel's attention to the statute of limitations issue, a statute of limitations challenge to the jury charge would have been no less valid at the time of trial. Brennan's complaint is that the jury charge permitted a RICO conviction based on predicate acts occurring more than five years before indictment. At the time of trial, the basis for such an objection was "far from unknown," *see Engle v. Isaac*, 456 U.S. at 131, 102 S.Ct. at 1573, as the applicable statute of limitations was clearly established, *see Walsh*, 700 F.2d at 851. The subsequent decisions in *McNally* and *Carpenter* are simply not relevant to this issue. Thus, whether the failure to raise the issue is explained by inadvertence or tactics, Brennan has shown no cause to excuse his procedural default, *see Engle v. Isaac*, 456 U.S. at 133–34, 102 S.Ct. at 1574–75;

---

3. Because we find Brennan's argument procedurally foreclosed, we do not examine another barrier that could preclude collateral relief, whether the claim would fall within the narrow realm of nonconstitutional or nonjurisdictional claims cognizable under section 2255. *See Wright v. United States*, 732 F.2d 1048, 1056–57

(2d Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985); *Fiumara v. United States*, 727 F.2d 209, 213 (2d Cir.), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984). The same comment applies to Brennan's enterprise argument, discussed *infra*.

*Murray v. Carrier*, 477 U.S. at 486–87, 106 S.Ct. at 2644–45, and his statute of limitations argument will not be reviewed here.

c. *Procedural Foreclosure of Brennan's Argument Based on the Statutory Meaning of "Enterprise"*

Relying on *United States v. Ivic*, 700 F.2d 51 (2d Cir.1983), Brennan argues that the Supreme Court of New York cannot be considered an "enterprise" within the meaning of the RICO statute, 18 U.S.C. § 1961(4). He therefore argues that his RICO convictions are invalid.

Unlike his statute of limitations argument, this enterprise argument was raised by Brennan at trial. 629 F.Supp. at 295. Thus, our consideration of procedural foreclosure focuses on Brennan's failure to raise this issue in his direct appeal to this Court.

■ As noted *supra*, the traditional standard for the collateral review of nonconstitutional or nonjurisdictional claims has precluded review of such claims where they were not raised on direct review. We have on one occasion implied in *dicta* that, following *Frady*, the cause and prejudice test should now apply to nonconstitutional and nonjurisdictional arguments not raised on direct appeal. *See Fiumara v. United States*, 727 F.2d 209, 213–14 (2d Cir.) (applying *Frady* primarily to failure to raise nonconstitutional and nonjurisdictional objection at trial but also noting failure to raise issue on appeal), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984). Nevertheless, in the absence of clear direction from the Supreme Court, we are reluctant to treat the cause and prejudice test as if it is "universally applied[,] ... govern[ing] virtually all questions of procedural default for ... federal prisoners." Meltzer, *supra* at 1147; *cf. United States v. Corsentino*, 685 F.2d 48, 50–51 (2d Cir.1982) (reading *Frady* narrowly so as not to apply to a challenge of a sentence alleged to have been imposed illegally). In the face of earlier Supreme Court prece-

dent, *see, e.g., Stone v. Powell*, 428 U.S. at 477 n. 10, 96 S.Ct. at 3044 n. 10, to hold that *Frady* requires that the cause and prejudice test apply to all nonconstitutional and nonjurisdictional arguments would seemingly constitute an expansion of the availability of collateral review. This would be an anomalous result because *Frady* and the Supreme Court's other cause and prejudice decisions were surely not intended to expand the availability of collateral review to those who have failed to raise claims at the first opportunity to do so. *See Frady*, 456 U.S. at 178, 102 S.Ct. at 1599 (Brennan, *J.*, dissenting) (criticizing the majority's "further step down this unfortunate path" of "progressive emasculation of collateral review of criminal convictions"); *see also Sanchez v. Miller*, 792 F.2d 694, 698 (7th Cir.1986) ("underlying policy" of cause and prejudice test is to require prisoners to present claims first to "the forum initially available, primarily because of the costs associated with granting a writ of habeas corpus"), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987). We therefore choose to adhere to the traditional rule that nonconstitutional and nonjurisdictional claims are generally procedurally foreclosed to a section 2255 petitioner if not raised on direct appeal.[4]

We believe that Brennan's enterprise argument is neither constitutional nor jurisdictional in nature. Brennan's claim amounts to the contention that he was convicted under an erroneous interpretation of a statutory term. As Judge Friendly said in *United States v. Travers:*

[W]e must take *Sunal* as meaning that when the error is one which can be rectified by proper construction of a criminal statute without resort to the Constitution, a claim that a conviction was had without proof of all the elements required by the statute is not a constitutional claim as that phrase is used in respect of collateral attack.

514 F.2d 1171, 1177 (2d Cir.1974) (relying also on *Davis*, 417 U.S. at 345, 94 S.Ct. at

---

4. We note that Brennan's enterprise argument would be considered forfeited even if the cause and prejudice test governed because he has not shown any cause for failing to raise this issue in his direct appeal.

2304); *see also Sunal*, 332 U.S. at 182–83, 67 S.Ct. at 1592–93; *United States v. Angelos*, 763 F.2d 859, 861 (7th Cir.1985) (assessing collateral reviewability of "issues of a nonconstitutional, nonjurisdictional character" where petitioner's claim was that the conduct for which he was convicted was not a crime).

Brennan's enterprise argument appears to be that he was convicted for "an act that the law does not make criminal." *See Davis*, 417 U.S. at 346, 94 S.Ct. at 2305. Such a characterization might suggest turning for guidance to cases where a change in the law subsequent to the petitioner's direct appeal creates "exceptional circumstances" making procedural foreclosure of a petitioner's nonconstitutional claim inappropriate. *See id.; see also Sunal*, 332 U.S. at 180, 67 S.Ct. at 1591 (quoting *Bowen v. Johnston*, 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939)); *Loschiavo*, 531 F.2d at 663; *United States v. Coke*, 404 F.2d 836, 846–47 (2d Cir.1968) (in banc). Recognizing the seriousness of such a situation, we have on occasion used "due process" language. *See Loschiavo*, 531 F.2d at 666; *cf. United States v. Liguori*, 438 F.2d 663, 669 (2d Cir.1971) (assessing effect on conviction of subsequent constitutional decision). Nevertheless, we believe that where such cases concern the interpretation of a statute, they can be collaterally reviewed under the discretionary exception to the general rule that nonconstitutional and nonjurisdictional claims are forfeited if not raised on direct appeal, and not because they are constitutional claims. Moreover, in making his enterprise argument, Brennan points to no change in the law subsequent to his direct appeal. Thus, we reject any "endeavor ... to magnify [Brennan's enterprise argument] to constitutional proportions." *See Sunal*, 332 U.S. at 182, 67 S.Ct. at 1592.[5]

▮ We find no "exceptional circumstances" warranting review of Brennan's

nonconstitutional and nonjurisdictional enterprise argument. The relevant law was well established at the time of his direct appeal, *see United States v. Bagaric*, 706 F.2d 42, 55–57 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983); *Ivic*, 700 F.2d at 64–65; *United States v. Angelilli*, 660 F.2d 23, 30–35 (2d Cir.1981), *cert. denied*, 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed.2d 449 and 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982), and there has been no subsequent change of consequence. Therefore, we conclude that Brennan procedurally forfeited his enterprise argument when he failed to raise it on direct review.

**B.** *The Travel Act and Extortion Convictions*

Brennan also launches a broad attack on each of his fourteen Travel Act convictions and his one extortion conviction. Brennan's argument here seems to be based on a claim of prejudicial "spillover," *see Ivic*, 700 F.2d at 65, resulting from the inclusion in the trial of the wire fraud charges. We fail to see any such prejudice. We agree with the district court that "all of the evidence admitted in support of the wire fraud counts would have been admissible in support of the valid Travel Act counts." 685 F.Supp. at 887. Given this, Brennan's argument seems to be based on the claim that because the jury charge permitted the Travel Act and extortion convictions to be based on telephone calls, the jury therefore may have considered the "intangible rights" theory associated with the wire fraud charges in considering all of the crimes charged. The district court properly held that its jury instructions requiring the jury to consider each count separately, App. at 29, 32, adequately protected against prejudicial spillover. *See, e.g., United States v. Teitler*, 802 F.2d 606, 617 (2d Cir.1986).[6]

---

**5.** In holding Brennan's enterprise argument to be nonconstitutional in nature, we have considered and rejected his attempt to "magnify" the importance of his statutory interpretation through references to separation of powers concerns. *See* Br. of Appellant at 18–21.

**6.** In this appeal, Brennan does not frame his challenge to his Travel Act and extortion convictions in terms of misjoinder, as he apparently did in the district court. *See* 685 F.Supp. at 887. Nevertheless, we note that the district court

122

Because we find that the jury's consideration of the Travel Act and extortion charges was not tainted by the presence in his trial of the "intangible rights" theory we have recently, in a similar context, termed "hardly 'inflammatory,'" *see Friedman*, 854 F.2d at 582, we reject Brennan's challenge to these convictions.

## CONCLUSION

We uphold the validity of Brennan's RICO and RICO conspiracy convictions because their validity is unaffected by the vacatur of his wire fraud convictions. Brennan's challenges to these two convictions based on the statute of limitations and the statutory meaning of "enterprise" have been procedurally forfeited and cannot be raised here. With respect to his Travel Act and extortion convictions, Brennan was in no way unfairly prejudiced by the presence in the trial of the wire fraud charges, and we refuse to disturb those convictions.

We affirm the judgment of the district court denying Brennan further relief.

properly rejected the prejudicial "spillover" ar-
gument framed in those terms.