Evan **CALLANAN**, Sr. (87–2034), Evan Callanan, Jr. (87–2036), Petitioners–Appellants,

v.

**UNITED STATES of America,** Respondent–Appellee.

Nos. 87–2034, 87–2036.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 23, 1988.

Decided July 26, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc Oct. 5, 1989.

**230**

Harold Gurewitz (argued), Detroit, Mich., for Evan Callanan, Jr.

Nicholas Smith (argued), Southfield, Mich., for Evan Callanan, Sr.

Joseph Papelian, Asst. U.S. Atty., Sheldon N. Light (argued), Detroit, Mich., for U.S.

Before MARTIN and NELSON, Circuit Judges, and EDWARDS, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

Evan Callanan, Sr., a former Michigan state court judge, and his son, Evan Callanan, Jr., an attorney, were convicted in federal court on a number of charges, including mail fraud, brought in connection with a bribery scheme. After the convictions were affirmed by this court, the Supreme Court repudiated the "intangible rights" theory on which the Callanans' mail fraud convictions had been premised. *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Motions to vacate sentence under 28 U.S.C. § 2255 were denied by the district court, and the Callanans appealed again. We conclude that *McNally* must be applied retroactively and that the Callanans' mail fraud convictions must be vacated. With the exception of the younger Callanan's RICO and RICO conspiracy convictions, we shall allow the Callanans' other convictions to stand.

I

Evan Callanan, Sr. was a trial judge in Michigan's Eighteenth Judicial District Court in Westland, Michigan. His attorney son practiced law in Westland. With the aid of an informant and undercover FBI agents wearing body recorders, extensive evidence was collected concerning the participation of the Callanans in a scheme to fix several of Judge Callanan's cases for bribes ranging from $100 to $6000.

In March of 1983 a superseding indictment was returned against the Callanans and two others, Sam Qauod and Richard Debs, charging mail fraud, substantive RICO violations, and RICO conspiracy. Attorney Callanan was also charged with ob-

struction of a criminal investigation, and he was indicted separately for perjury.

A jury found Judge Callanan guilty on the RICO and RICO conspiracy counts and on one mail fraud count; he was acquitted on three other mail fraud counts. Attorney Callanan was convicted on all counts, including perjury. Judge Callanan was sentenced to five years in prison on the mail fraud counts and 10 years on the RICO and RICO conspiracy counts, the sentences to be served concurrently. Attorney Callanan was sentenced to eight years in prison on the RICO and RICO conspiracy counts and five years on each of the other counts. We affirmed the convictions in part, but remanded the case for reconsideration of the Callanans' sentences. *United States v. Qauod*, 777 F.2d 1105 (6th Cir. 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1499, 89 L.Ed.2d 899 (1986). The district court concluded that the sentences were correct, and we affirmed that judgment. *United States v. Callanan*, 810 F.2d 544 (6th Cir.), *cert. denied*, 484 U.S. 832, 108 S.Ct. 107, 98 L.Ed.2d 67 (1987).

In *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), a case decided after the Callanans had gone to prison and begun to serve their sentences, the Supreme Court repudiated the intangible rights theory on which the Callanans' mail fraud convictions had been premised. Judge Callanan and his son then filed motions to vacate sentence pursuant to 28 U.S.C. § 2255. The district court denied relief, declining to give *McNally* retroactive effect. *United States v. Callanan*, 671 F.Supp. 487 (E.D.Mich.1987). Both defendants appealed.

## II

Ordinarily, a prisoner seeking vacation of his sentence under 28 U.S.C. § 2255 on a ground not raised at trial must show reasonable cause for failure to raise the issue initially and must show that prejudice will result if the issue is not considered. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982). The Callanans did not contend at trial that schemes to defraud citizens of their intangible rights lie outside the purview of the mail fraud statute, but we do not believe that their failure to advance such an argument was fatal to their present claim.

Before *McNally*, it was settled law in this circuit (and in every circuit that had considered the issue) that the mail fraud statute permitted prosecutions based on the intangible rights theory. *McNally* has been described as "blockbusting," "a total surprise," and "wholly unexpected." *United States v. Ochs*, 842 F.2d 515, 521 (1st Cir.1988). The "cause" requirement of *Frady* should not be applied in a way that would encourage efforts to relitigate well settled points of law, *cf. Ingber v. Enzor*, 841 F.2d 450, 454 (2d Cir.1988), and the fact that the point appeared to be settled constituted cause for not raising it. There is a strong argument, moreover, that cause need not be shown at all in these unusual circumstances. See *United States v. Shelton*, 848 F.2d 1485, 1490 n. 4 (10th Cir.1988) (en banc) (probable innocence may make showing of cause unnecessary).

The prejudice requirement boils down to a question of whether the Callanans could properly have been convicted anyway under the interpretation of the mail fraud statute articulated in *McNally*. We shall come to that question presently.

## III

■ The district court's decision that *McNally* should not be given retroactive effect was based on *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam). That case involved the retroactivity of "a decision announcing a new constitutional rule of criminal procedure." 478 U.S. at 258, 106 S.Ct. at 2880. The case at bar involves not a new rule of criminal procedure, but a new interpretation of the substantive criminal law. In this the present case resembles *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), a decision indicating that where the intervening change of law is such that the defendant was punished "for an act that the law does not make criminal," the new rule of law must be applied

retroactively in postconviction proceedings. See *id.* at 346, 94 S.Ct. at 2305; see also *United States v. Johnson,* 457 U.S. 537, 550, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202 (1982) (dictum) ("the Court has recognized full retroactivity as a necessary adjunct to a ruling that a trial court lacked authority to commit or punish a criminal defendant in the first place").[1]

Subsequent to the district court's decision in this case, we applied *McNally* retroactively in direct appeals, see *United States v. Stack,* 853 F.2d 436, 437 (6th Cir.1988), and in postconviction proceedings on a motion for a writ of error coram nobis. *Allen v. United States,* 867 F.2d 969 (6th Cir.1989). Other courts of appeals have concluded uniformly that the rule of *McNally* must be applied retroactively in postconviction proceedings. See *Ingber,* 841 F.2d at 455; *United States v. Osser,* 864 F.2d 1056, 1058 (3d Cir.1988); *United States v. Mandel,* 862 F.2d 1067, 1075 (4th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989); *Magnuson v. United States,* 861 F.2d 166, 167 (7th Cir.1988); *United States v. Mitchell,* 867 F.2d 1232, 1233 (9th Cir.1989); *Shelton,* 848 F.2d at 1488–90. We agree that *McNally* must be given retroactive effect in § 2255 proceedings.

### IV

■ The federal mail fraud statute, 18 U.S.C. § 1341, provides in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do [uses the mails or causes them to be used], shall be fined not more than $1,000 or imprisoned not more than five years, or both."

Although the lower federal courts had interpreted the words "scheme or artifice to defraud" as broad enough to include schemes to defraud the public of "intangi-

ble rights" such as the right to good government, *McNally* read the statute as "limited in scope to the protection of property rights." 483 U.S. at 360, 107 S.Ct. at 2881. Schemes to defraud the public of intangible rights "such as the right to have public officials perform their duties honestly" fall outside the scope of the federal mail fraud statute. *Id.* at 358, 107 S.Ct. at 2880.

In considering whether the Callanans' mail fraud convictions may stand in light of *McNally,* the critical question is whether the scheme charged in the indictment may fairly be characterized as a scheme or artifice to defraud the victim or victims of property rights rather than intangible rights. See *Allen,* 867 F.2d at 971; *United States v. Runnels,* 877 F.2d 481 (6th Cir. 1989). Each mail fraud count of the Callanans' indictment charged that the defendants

> "devised and intended to devise a scheme and artifice to defraud the State of Michigan and its citizens of their right to the conscientious, legal, faithful, disinterested, and honest services, performance, and judgment of the defendant EVAN H. CALLANAN, SR. in his official capacity as Judge of the 18th Judicial District Court and as a Judge of the Third Judicial Circuit Court (Wayne County) at Building A, Eloise Complex, free from corruption, partiality, bias, dishonesty, and official misconduct in accordance with the laws of the State of Michigan. ... It was part of such scheme and artifice to defraud that Defendants ... entered with one another into a corrupt relationship in which each of them would and did act with intent illegally to benefit, directly and indirectly, and through the use of fraud and deception, themselves...."

The language of the indictment is strikingly similar to language the Supreme Court found inadequate in *McNally,* where the Supreme Court paraphrased the indictment as alleging

---

**1.** The Supreme Court's recent decision in *Teague v. Lane,* —— U.S. ——, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), addresses only the retroac-

tivity of "new constitutional rules of criminal procedure" and thus does not control our decision here. 109 S.Ct. at 1075.

"(1) a scheme to defraud the citizens and government of Kentucky of their right to have the Commonwealth's affairs conducted honestly, and

(2) to obtain directly and indirectly, money and other things of value by means of false pretenses and the concealment of material facts." 483 U.S. at 353–54, 107 S.Ct. at 2877–78.

The language also bears a strong resemblance to language we found inadequate in *Runnels,* where the indictment charged a scheme

"to defraud the members of Local 22, United Auto Workers, of the right to have the business of Local 22 conducted honestly, fairly, impartially, free from corruption, collusion, partiality, disloyalty, dishonesty and fraud." 877 F.2d at 482.

That the government proceeded against the Callanans on an intangible rights theory is also made clear by the jury instructions:

"In order to establish that a Defendant is guilty of mail fraud, the Government must prove three elements beyond a reasonable doubt:

1. That there was devised a scheme to defraud the State of Michigan and its citizens of their right to the conscientious, legal, faithful, disinterested, and honest services, performance, and judgment of Evan H. Callanan, Sr., in his official capacity as a Judge of the 18th District Court and Third Judicial Circuit Court of the State of Michigan, free from corruption, partiality, bias, dishonesty, and official misconduct.

2. That the Defendant participated in that scheme wilfully and knowingly, and with specific intent to defraud.

3. That the Defendant used the United States Postal Service by mailing, or causing to be mailed, some matter or things for the purpose of executing the scheme to defraud."

Our review of the indictment and the entire record of this case convinces us that the government put all its eggs in the "intangible rights" basket. The Callanans were never charged with scheming to defraud the people of the State of Michigan of anything more tangible than "the conscientious, legal, faithful, disinterested, and honest services, performance, and judgment" of Judge Callanan. From start to finish, the jury was told that it need not find that the defendants had defrauded anyone of money or property and that the scheme to defraud the State of Michigan and its people of the honest services of a judge could be punished under the federal mail fraud statute.

The government now seeks to save the mail fraud convictions by elaborating an agency law theory under which the Callanans could be said to have defrauded the State of Michigan of property. Essentially the argument is that since an agent is required to disgorge profits earned within the scope of his employment, bribes paid in connection with the Callanans' scheme were really property of the State of Michigan.

The government's principal authority for such an approach is a decision of this court which has now been vacated. *United States v. Runnels,* 833 F.2d 1183 (6th Cir. 1987), *modified,* 842 F.2d 909 (6th Cir. 1988), *vacated,* 842 F.2d 912 (6th Cir.1988), *on reh'g en banc,* 877 F.2d 481 (6th Cir. June 13, 1989). As the en banc court held on rehearing, the agency law theory, whatever its merits,[2] cannot be raised by the government for the first time after a defendant has been tried and convicted on an impermissible "intangible rights" theory. *Runnels,* 877 F.2d at 482; see also *United States v. Price,* 857 F.2d 234, 236 n. 1 (4th

---

2. The agency law theory has been sharply criticized by a number of other circuits. See *Ochs,* 842 F.2d at 526; *United States v. Zauber,* 857 F.2d 137, 146 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989); *Mandel,* 862 F.2d at 1073; *United States v. Holzer,* 840 F.2d 1343, 1347–48 (7th Cir.1988); *Shel-* *ton,* 848 F.2d at 1491–92. It bears a strong resemblance to a theory advanced by Justice Stevens in a part of his dissenting opinion in *McNally* not joined by any other member of the Supreme Court. See *McNally,* 483 U.S. at 377 n. 10, 107 S.Ct. at 2890 n. 10 (Stevens, J., dissenting).

Cir.1988); *United States v. Italiano*, 837 F.2d 1480, 1486 (11th Cir.1988).

The government also cites *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), where a unanimous Supreme Court held that an employee's scheme to deprive his employer of confidential business information was a scheme to defraud the employer of "property" as that term is used in the mail fraud statute. The Court went out of its way, however, to make clear that the employer's proprietary interest in such information was "much more than its contractual right to [the employee's] honest and faithful service, an interest too ethereal in itself to fall within the protection of the mail fraud statute." 484 U.S. at 25, 108 S.Ct. at 320. The scheme charged here—a "scheme to defraud the State of Michigan and its citizens" of the honest services of one of its judges—was a scheme to defraud the public of precisely the sort of "ethereal" interest *Carpenter* found insufficient.

## V

### A

Turning to the Callanans' other convictions, we first address their substantive RICO convictions under 18 U.S.C. § 1962(c). That statute makes it

"unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...."

The dispute in this case centers around the "pattern" requirement, which entails "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). "The predicate acts must be 'related' and must 'amount to or pose a threat of continued criminal activity.'" *H.J., Inc. v. Northwestern Bell Telephone Co.*, — U.S. —, —, 109 S.Ct. 2893, 2895, 106 L.Ed.2d 195 (1989).

Attorney Callanan was charged with participating in a pattern of racketeering activity consisting of three acts of mail fraud and one act of obstruction of a criminal investigation. The government concedes that if Attorney Callanan's mail fraud convictions are vacated, his substantive RICO conviction cannot stand.

Judge Callanan was charged with participating in a pattern of racketeering activity consisting of four acts of mail fraud and seven acts of bribery. Judge Callanan argues that there is no way to tell which predicate acts the jury relied on and that his substantive RICO violation therefore cannot stand.

A number of courts have held that other verdicts of the same jury may serve the function of a special verdict on the predicate acts, where those other verdicts necessarily required a finding that the RICO defendant had committed the predicate acts. See *Brennan v. United States*, 867 F.2d 111, 115 (2d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989); *United States v. Lopez*, 803 F.2d 969, 976–77 (9th Cir.1986), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 530 (1987); *United States v. Pepe*, 747 F.2d 632, 667–68 (11th Cir.1984); *United States v. Riccobene*, 709 F.2d 214, 229–30 (3d Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); *United States v. Peacock*, 654 F.2d 339, 348 (5th Cir.1981), *modified*, 686 F.2d 356 (5th Cir. Unit B 1982), *cert. denied*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983).

In the instant case, the government argues that the RICO conviction of Sam Qauod, Judge Callanan's bagman, effectively operates as a special verdict on at least two of the seven predicate acts of bribery in which Judge Callanan was alleged to have participated. The RICO count against Qauod alleged one predicate act of mail fraud and seven predicate acts of bribery, all involving Judge Callanan. The jury acquitted Qauod on a separate mail fraud count identical to the single predicate act of mail fraud charged in the RICO count against Qauod, so Qauod's RICO conviction must necessarily have rested on a jury determination that Qauod had conducted or participated in the enterprise's affairs through at least two predi-

cate acts of bribery. There is no reason to assume that the jury acted irrationally or rendered inconsistent verdicts, see *Ricco-bene*, 709 F.2d at 229–30, so we may safely conclude that Judge Callanan's RICO conviction also rests on the jury's finding of a "pattern" of at least two predicate acts of bribery unaffected by the invalidity of the mail fraud acts. That is all it takes for a valid RICO conviction; Judge Callanan's substantive RICO conviction will be allowed to stand.

### B

■ We next consider the Callanans' RICO conspiracy convictions under 18 U.S.C. § 1962(d), which prohibits conspiracies to violate § 1962(a), (b), and (c). The essence of the RICO conspiracy count in this case was an agreement to violate § 1962(c) by engaging in a pattern of racketeering activity consisting of seven predicate acts of bribery, four predicate acts of mail fraud, and one predicate act of obstruction of a criminal investigation. Although the indictment alleged the existence of a single conspiracy, the jury could properly convict any defendant of RICO conspiracy upon a finding that he had agreed to join a racketeering enterprise and had agreed to the commission of any two of the various predicate acts charged in the indictment. See *United States v. Joseph*, 781 F.2d 549, 554 (6th Cir.1986).

Judge Callanan's challenge to his RICO conspiracy conviction is built on the same foundation as his challenge to his substantive RICO conviction and must fail for the same reasons. See *Brennan*, 867 F.2d at 116. In convicting Judge Callanan of RICO conspiracy, the jury necessarily found the required agreement. For the same reasons that have led us to uphold Judge Callanan's substantive RICO conviction under § 1962(c), we believe the jury necessarily found that Judge Callanan agreed to the commission of at least two acts of bribery, and hence at least two predicate acts of racketeering independent of the acts of mail fraud charged in the indictment.

■ We are unable to agree with the government that Attorney Callanan's RICO conspiracy conviction can be saved. It is simply impossible to say with confidence that the jury necessarily found that Attorney Callanan agreed to the commission of at least two non-mail fraud acts of racketeering. It is possible to presume from the jury's conviction of Attorney Callanan on the obstruction count that the jury found that Attorney Callanan had agreed to the commission of that predicate act. But we simply have no basis for knowing what other predicate act or acts the jury found Attorney Callanan assented to in joining the conspiracy. The jury could rationally find that at least two predicate acts of bribery occurred without finding that Attorney Callanan assented to the commission of those acts. Thus the jury could have convicted Attorney Callanan of RICO conspiracy based on a finding that he agreed to the commission of the predicate act of obstruction and one or more predicate acts of mail fraud without necessarily finding that Attorney Callanan had agreed to the commission of any of the seven charged acts of bribery. Attorney Callanan's RICO conspiracy conviction must accordingly be vacated.

### C

■ Attorney Callanan contends that his conviction for obstruction of a criminal investigation cannot stand because the jury heard evidence on the mail fraud count that was irrelevant to the obstruction count. He argues that where charges justifying an initial joinder rest on an erroneous construction of law, joinder is void *ab initio*. *United States v. Sutton*, 605 F.2d 260, 272 (6th Cir.1979), *vacated in part*, *United States v. Sutton*, 642 F.2d 1001 (6th Cir.1980) (en banc), *cert. denied*, 453 U.S. 912, 101 S.Ct. 3144, 69 L.Ed.2d 995 (1981). The en banc court rejected this argument. Instead, following *Schaffer v. United States*, 362 U.S. 511, 514–17, 102 L.Ed.2d 325 (1960), we refused to reverse the defendant's conviction where it was "impossible to hold that this indictment was laid or prosecuted in bad faith or that the District Judge abused his discretion in failing to find prejudice and

grant further severance." *Sutton*, 642 F.2d at 1037. To obtain reversal, a defendant invoking the doctrine of "retroactive misjoinder" must demonstrate "compelling prejudice." *United States v. Warner*, 690 F.2d 545, 554 (6th Cir.1982).

Attorney Callanan has not met this burden. As we noted in another reversal of mail fraud convictions in light of *McNally*, "mail fraud ... constitute[s] conceptually a totally separate type of crime from that of obstructing justice and perjury." *United States v. Murphy*, 836 F.2d 248, 256 (6th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 307 (1988). In that case we found "no prejudicial 'spillover' effect requiring a vacation of the convictions for obstructing justice and perjury...." *Id.* In the case at bar, similarly, we find no prejudice to Attorney Callanan from the introduction of evidence on the mail fraud counts. The jury was carefully instructed to consider the evidence relevant to the various counts separately and "is presumed capable of sorting out evidence and considering each count and each defendant separately." *United States v. Swift*, 809 F.2d 320, 323 (6th Cir.1987).

■ Attorney Callanan further argues that the reference made to the mail fraud counts in the obstruction count of the indictment was improper and that not setting aside the obstruction conviction would be tantamount to a "constructive amendment" of the indictment without grand jury approval. This argument is not persuasive. Because the crime under investigation is not an essential element of the offense of obstruction of a criminal investigation, see *United States v. Lippman*, 492 F.2d 314, 317 (6th Cir.1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975), the specific references to the mail fraud statute in the obstruction count were unnecessary and may be stricken as surplusage without running afoul of the grand jury clause of the Fifth Amendment. See *United States v. Miller*, 471 U.S. 130, 140–45, 105 S.Ct. 1811, 1817–20, 85 L.Ed.2d 99 (1985).

### D

Attorney Callanan attacks his perjury conviction with the same initial argument about the prejudicial effect of the evidence introduced under the mail fraud charges. That argument is just as unavailing with respect to the perjury conviction as it was with respect to the obstruction conviction.

■ Attorney Callanan also argues that *McNally* renders the false testimony given about the scheme immaterial. We disagree. Testimony before a grand jury is material if it "has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation." *United States v. Richardson*, 596 F.2d 157, 165 (6th Cir.1979) (quoting *United States v. Howard*, 560 F.2d 281, 284 (7th Cir.1977)); see also *United States v. Adams*, 870 F.2d 1140, 1147 (6th Cir.1989). So long as the grand jury has authority to investigate possible violations of federal law, materially false grand jury testimony is a criminal offense, regardless of whether the grand jury's investigation ultimately leads to a valid indictment for a federal offense. *United States v. Sisack*, 527 F.2d 917, 920 (9th Cir.1976); *United States v. Jacobs*, 543 F.2d 18, 21 (7th Cir.1976), *cert. denied*, 431 U.S. 929, 97 S.Ct. 2632, 53 L.Ed.2d 244 (1977).

### VI

The judgment of the district court denying Judge Callanan's motion to vacate sentence is AFFIRMED with respect to Judge Callanan's RICO and RICO conspiracy convictions and REVERSED with respect to Judge Callanan's mail fraud conviction. Case No. 87–2034 is REMANDED for further proceedings consistent with this opinion, including reconsideration of Judge Callanan's sentence. The judgment of the district court denying Attorney Callanan's motion to vacate sentence is AFFIRMED with respect to Attorney Callanan's convictions for obstruction of a criminal investigation and perjury and REVERSED with respect to Attorney Callanan's mail fraud, RICO and RICO conspiracy convictions. Case No. 87–2036 is REMANDED for further proceedings consistent with this opinion, including reconsideration of Attorney Callanan's sentence.